610 So.2d 1090 (1992)
Glenn W.D. GRAY, et ux., Plaintiffs-Appellees,
v.
TEXACO, INC., Defendant-Appellant.
No. 91-992.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
On Rehearing February 5, 1993.
*1091 Jones, Jones & Alexander, J.B. Jones, Cameron, for plaintiffs-appellants.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert W. Clements, Lake Charles, for defendant-appellee.
Before DOUCET and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
BERNARD N. MARCANTEL, Judge Pro Tem.
The issue of this appeal is whether the trial judge erred in granting a motion for judgment notwithstanding the verdict dismissing with prejudice an American seaman's suit for personal injuries, and, alternatively, granting a new trial if the motion for judgment notwithstanding the verdict was improperly granted.
*1092 Glenn W.D. Gray (hereinafter Gray) filed suit against Texaco, Inc. (hereinafter Texaco) for personal injuries arising out of an accident which allegedly occurred on June 5, 1989, in Grand Lake, Cameron Parish, Louisiana, while he was in the course and scope of his employment. Gray's action was brought as an American seaman (1) under the Jones Act, 46 U.S.C.App. § 688, for negligence, (2) under the General Maritime Law for unseaworthiness of the vessel ROBIN B, and (3) for punitive damages, attorney's fees and penalties for failure to provide maintenance and cure. Gray's wife, Louisa LeBlanc Gray, joined the action asserting a claim for loss of consortium.
The case, which was tried before a jury, began on March 11, 1991, and was completed five days later. A unanimous verdict was returned, awarding Gray general damages in the amount of $790,000.00, and punitive damages in the amount of $2,000,000.00. The jury also awarded $20,000.00 in consortium damages to Mrs. Gray.
Texaco timely filed a Motion for Judgment Notwithstanding the Verdict (hereinafter Motion for JNOV), which the trial court granted, setting aside the jury verdict and dismissing Gray's petition with prejudice, and a Motion for New Trial, which the trial court granted in the event the Motion for JNOV was vacated or reversed.
It is from this judgment that Gray timely appeals.

FACTS
On June 5, 1989, while on board the S/B ROBIN B, Gray and his roustabout crew were laying pipe in a portion of Grand Lake. Barrel floats were used to prevent the line from sinking to the lake bottom as the line was made up on the ROBIN B and pulled across the water by a wire line unit stationed approximately 2,000 feet away.
After several sections of pipe were laid, it became necessary to attach a second set of barrels to the line to keep the line from sagging beneath the water. Gray pushed the barrels over the side of the boat and began to ride the barrel float out to the connection point. Conflicting testimony was given as to whether Gray was instructed by his supervisor, Clifford Little, as a safety precaution, not to ride the float out to the connection point, but to wait for him to retrieve an aluminum boat to use to position the barrel float underneath the line.
As Gray mounted the barrels and rode them out to the connection point, Little arrived with the aluminum boat and pulled along side Gray and the barrel float. Gray stepped into the boat and attempted to tie the pipe from the boat. He was not successful because the water was choppy and the barrels and pipe kept hitting together. Gray, fearing that he could possibly lose his hand if it was caught between the barrels and the pipe, remounted the barrels to try and tie them from that position. As he knelt on the barrels, a wave caused him to flip over into the water and land on his back.
Gray's supervisor, Little, tied the pipe off and then pulled Gray into the aluminum boat. There was conflicting testimony as to whether Little pulled Gray into the boat before he finished tying off the pipe. Gray completed his work day but, by the time he started driving home, he was experiencing pain in his legs and back and a co-employee finished the drive home.
Gray's relief, Lynn Decuir, testified that he saw Gray that evening and that Gray stated he had gotten hurt.
Later in the evening of June 5, 1989, Gray called Texaco's safety engineer, Carl Armentor (now deceased), and reported to him that he had fallen off some barrels and was hurt. They both decided that he should wait a few days and see if he would get better before seeing a doctor.
Gray's condition did not improve and, on the morning of June 8, 1989, he went to see his family physician, Dr. Roy Landry. In deposition, Dr. Landry stated that he remembered Gray telling him that he had fallen off a barge into the water and had injured his back.
Dr. Landry referred Gray to Dr. Harold J. Hebert, an orthopedic surgeon, who concluded that Gray was suffering from a degenerative disc disease. After physical therapy treatment, which caused him more pain, Gray consulted Dr. Louis Blanda, an *1093 orthopedic surgeon, who found that Gray had an abnormal disc at L5-S1. Eventually, back surgery was performed on Gray.
Texaco introduced evidence at trial of Gray's history of back trouble and of a complaint of back stiffness on June 2, 1989, when Gray was stringing pipe on land in the East Hackberry Field location. Different accident reports were introduced into evidence which gave conflicting dates as to when and how Gray was injured. Some reports referred to the June 2, 1989, date, and another referred to June 5, 1989.
The trial court stated in its reasons for judgment that "there is a total lack of evidence to support any connection between plaintiff's medical problems and the incident of June 5, 1989." The trial court further stated that "the weight of evidence that plaintiff did not suffer any injury-causing accident on June 5, 1989, is overwhelming and that reasonable men could not conclude otherwise." (Emphasis added.)
Gray appeals the trial court's granting of the Motion for JNOV.

LAW
The Louisiana Supreme Court, in Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, at page 832 (La.1991), discusses the criteria to be used in determining when a motion for JNOV is proper:
"A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott [v. Hospital Service Direct No. 1,] supra [496 So.2d 270 (La.1986) ]. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e., do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated."
We further note that, under the Federal jurisprudence, an even lighter burden of proof is placed upon the plaintiff, i.e. the so-called "featherweight" burden is applied in determination of the employer's motion for a directed verdict in a Jones Act case. Cobb v. Rowan Companies, Inc., 919 F.2d 1089 (5th Cir.1991); Bommarito v. Penrod Drilling Corp., 929 F.2d 186, at 188 (5th Cir.1991), citing Thornton v. Gulf Fleet Marine Corp., 752 F.2d 1074 (5th Cir.1985), quoting Lavender v. Kurn, 327 U.S. 645, 652, 66 S.Ct. 740, 743, 90 L.Ed. 916, 922 (1946). Under the "featherweight" burden, a directed verdict is justified "only when there is a complete absence of probative facts to support the verdict."
After reviewing the record in the case sub judice, we conclude that it was error to grant Texaco's motion for JNOV. The evidence presented to the jury was of such conflicting nature that it is impossible to say that reasonable men could not reach different conclusions. It appears from the record that the jury found the plaintiff and his witnesses to be more credible than those of Texaco and the award to plaintiff reflects its conclusions of credibility. As previously stated, the trial court should not evaluate the credibility of the witnesses and all factual questions should be resolved in favor of the non-moving party. Therefore, *1094 the motion for JNOV granted by the trial court is set aside.
The trial court granted in the alternative a new trial if the Motion for JNOV was set aside. While the trial court remains the original forum for resolving factual and legal issues, when an appellate court has all the facts before it, a remand is not necessary. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); Knight v. Miller, 503 So.2d 120, 124 (La.App. 5 Cir. 1987). Therefore, instead of remanding for a new trial, this court will decide de novo the issues of the case, and the trial court is ordered not to proceed with a new trial as provided for in La.C.C.P. Art. 1811(C)(2).

SEAMAN STATUS
The first issue which must be addressed is whether Gray was a Jones Act seaman.
The Jones Act provides that "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law...." 46 U.S.C.App. § 688.
The court in Wilkerson v. Teledyne Movible Offshore, Inc., 496 F.Supp. 1279, 1282-1283 (E.D.Tex.1980), defined seaman as one who:
"`(1) [has] a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips.'" (Citations omitted.)
We find that the record contains sufficient facts to support the conclusion that Gray had a significant connection with the S/B ROBIN B and that his work contributed to the function of the vessel. Therefore, Gray is found to be a seaman.

ACCIDENT OF JUNE 5, 1989
Defendants contend that Gray was not injured in an accident on June 5, 1989, while using barrel floats to lay pipe in Grand Lake. Defendants allege that Gray's injuries were received while he was stringing pipe on land at its East Hackberry site on June 2, 1989, and, therefore, no accident occurred on June 5, 1989.
After a thorough review of the record, we hold that there is ample evidence to show that Gray was involved in an accident on June 5, 1989, while he was kneeling on the barrel floats laying pipe. The water was rough and a wave caused him to flip into the water and land on his back.

UNSEAWORTHINESS
Ellender v. Texaco, Inc., 425 So.2d 291, at page 295 (La.App. 3 Cir.1982), discusses the duty of a shipowner to furnish a reasonably safe vessel:
"Under admiralty and general maritime law a shipowner owes the duty to furnish a vessel reasonably safe and fit for its intended purpose. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). This duty to prevent unseaworthy conditions is absolute, continuing and nondelegable. Allen v. Seacoast Products, Inc., 623 F.2d 355 (5th Cir.1980). This duty includes the obligation to provide necessary appliances, gear and equipment. Webb v. Dresser Industries, 536 F.2d 603 (5th Cir.1976).
* * * * * *
This broad duty is such that if Ellender can show his injuries were the result of even the slightest negligence of his employer, liability follows. Rains v. Diamond M Co., supra [396 So.2d 306 (La. App. 3d Cir.1981)]; Davis v. Hill Engineering, Inc., 549 F.2d 314 (5th Cir. 1977)."
Applying this duty to the case at hand, Texaco chose to use the spud barge ROBIN B, which was not ordinarily used for this type of operation because the pipe could not be completely assembled upon the vessel. Utilization of the S/B ROBIN B required the vessel to be spudded down, the pipe made up, and then pulled from the S/B ROBIN B by cable attached to a wireline pulling unit located on another barge almost a mile away. This procedure created safety problems.
The use of barrels to support the pipe as it was being strung out and laid on the lake bottom created an unsafe working procedure *1095 which was the cause-in-fact of Gray's accident.
Gray was totally inexperienced and untrained on any procedure of how to attach the second set of flotation barrels. He did the work in the manner he thought it could be done.
Texaco could have eliminated the unsafe working conditions by either using another vessel, i.e. a lay barge, which was better equipped to handle the laying of pipe, or moving the S/B ROBIN B every 1,000 feet instead of 2,000 feet. Also, the weather conditions, which were causing heavy seas, should have alerted Texaco to the potentially dangerous situation.
Therefore, we find that Texaco was negligent in its failure to furnish a reasonably safe workplace. This negligence was the proximate cause of Gray's injuries.

GRAY'S NEGLIGENCE
Defendant contends that, if Texaco is found to be negligent or the S/B ROBIN B unseaworthy, then Gray was comparatively negligent in his actions when he mounted the barrel float.
"The burden of proving a plaintiff's contributory negligence rests on the defendant. Tucker v. Lirette, 400 So.2d 647 (La.1981). Hamilton v. Employer's Cas. Co., 506 So.2d 655 (La.App. 4th Cir. 1987).
* * * * * *
A seaman's duty to protect himself is slight, encompassing only that he do the work assigned and not to find the safest method. Spinks v. Chevron Oil Co., 507 F.2d 216, 223 (5th Cir.1975). A seaman is not contributorily negligent merely because he proceeds in an unsafe area. Rather, it must be shown that he knew or should have known that a safe alternative was available or that he had a duty to rectify an unsafe condition. Ceja v. Mike Hooks, Inc., 690 F.2d 1191, 1195 (5th Cir.1982)."
Slay v. Quarles Drilling Co., 534 So.2d 1300, at page 1302 (La.App. 4 Cir.1988), writ denied 536 So.2d 1235 (La.1989).
A review of the record does not convince us Gray was contributorily negligent. Clifford Little, Gray's supervisor, testified that he told Gray not to mount the barrels but to wait until he brought the aluminum boat around and ride that out. Gray testified that his back was turned to Little when he was mounting the barrel float and he did not hear Little saying anything to him about not riding the barrels. Evidence was also brought out that Gray does have a hearing problem and possibly this could account for the contradictory testimony.
The record also shows that Gray was an employee of Texaco's for a number of years and he was aware that disobeying an order was certain to result in getting fired.
Under Slay, supra, the seaman's duty to protect himself is slight and, in performing his job, is not required to find the safest way to accomplish the task.
We are of the opinion that Gray was attempting to accomplish the task set before him and felt that riding the barrel float may have been safer than riding the small aluminum boat. We find Gray's testimony sincere in that, even if Little did instruct him not to ride the barrel float but to wait on the aluminum boat, he did not hear the order given. Therefore, we hold that Gray was not comparatively negligent in causing the accident.

QUANTUM
Gray was examined by several doctors and, after receiving physical therapy which seemed to aggravate his back pain, he was diagnosed as having an abnormal disc at L5-S1. He was treated conservatively until his pain flared up in November 1989, when he was hospitalized and placed in traction. By this time, the pain was radiating into his legs. He was placed in a back corset, but he continued to have muscle spasms. Dr. Louis Blanda spoke with Gray about surgery, but Gray wanted to wait for some time. He continued to experience pain and developed difficulty in walking. Finally, Gray was admitted to the hospital on March 5, 1990, and Dr. Blanda performed a laminectomy at level L4-5 and L5-S1.
The surgery was a success, but, at the time of trial, Gray was still recovering and he was given a 15-20% disability with a restriction or inability to do any heavy lifting. He was told to stick to light or sedentary type work.
*1096 Special Damages
Special damages are those which must be established by reasonably exact proof.
Testimony was given by two economic specialists. The range given for the amount of past lost income Gray had incurred after the accident up to the date of trial was estimated to be between $44,000.00 and $55,500.00 after taxes and including fringe benefits.
The two experts further testified that Gray's potential loss of future income ranged between $257,400.00 and $505,600.00.
Based on the testimony presented, we find that Gray should be awarded lost wages, including past and future, in the amount of $450,000.00.
Pain and Suffering
This court noted in Hopkins v. Travasos, 569 So.2d 1056 (La.App. 3 Cir. 1990), that factors which are considered in assessing quantum for pain and suffering are the severity and duration thereof. LeBleu v. Dynamic Indus. Constructors, 526 So.2d 1184 (La.App. 3 Cir.1988), writ denied 528 So.2d 154 (La.1988).
The record shows that Gray was in increasing back pain from June 5, 1989, the date of the accident, until his surgery in March 1990. Although his surgery went without any complications, Gray has had intermittent periods of pain and will continue to have these periods of pain from time to time. Dr. Blanda testified that it usually takes between a year and a year and one-half to recover from back surgery to achieve the maximum amount of recovery.
Therefore, we award Gray the amount of $100,000.00 for past pain and suffering, and $50,000.00 for future pain and suffering.
Disability
Dr. Blanda testified that Gray would suffer a permanent disability of between 15 and 20 percent and that he would no longer be able to make his living from doing any heavy lifting. At the time of trial, Gray had not fully recovered from the surgery, but Dr. Blanda felt that he would be able to return to sedentary to light work.
Considering all of these factors, we award Gray disability in the amount of $50,000.00.
Punitive Damages
Gray contends that, because of the arbitrary and capricious actions of defendant regarding the payment of maintenance and cure, he should be awarded punitive damages.
This court notes a U.S. Supreme Court decision, Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), in which that Court held that, although remedies under general maritime would allow recovery for loss of society and punitive damages, Death on High Seas Act and the Jones Act expressly did not allow such damages and, therefore, they would not sanction more expansive remedies than those allowed by federal statutes.
In reaching this conclusion, Justice O'Connor states at page 36, 111 S.Ct. at pages 327, 328 that:
"We sail in occupied waters. Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them...."
Therefore, in order that we be consistent with the decision in Miles, supra, we hold that punitive damages in maintenance and cure claims are denied.
Loss of Consortium
Defendants contend that Gray's wife, Louisa LeBlanc Gray, is not entitled to an award of damages for loss of consortium. The United States Fifth Circuit Court of Appeal dealt with this issue in two recent cases, Michel v. Total Transportation, Inc., 957 F.2d 186 (C.A. 5 1992), and Murray v. Anthony J. Bertucci Const. Co., Inc., 958 F.2d 127 (C.A. 5 1992). The court held in those cases that damages recoverable in general maritime causes of action for personal injury of a Jones Act seaman do not include loss of consortium. Accordingly, the award of damages for consortium is denied.

ATTORNEY'S FEES
Plaintiff contends that he is entitled to an award of attorney's fees under maintenance and cure.
*1097 This court notes that, in Vaughn v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962), attorney's fees were recoverable for pursuing a claim for maintenance and cure against a shipowner who willfully, arbitrarily and capriciously failed to pay maintenance and cure. Vaughn, supra, did not classify the attorney's fees as punitive damages, but "necessary expenses" and, therefore, this decision is not inconsistent with Miles, supra. Accordingly, we award Gray attorney's fees in the amount of $10,000.00.

PREJUDGMENT INTEREST
This court held in McFarland v. Justiss Oil Co., 526 So.2d 1206 (La.App. 3 Cir.1988), that prejudgment interest can be awarded on all damages except future non-economic damages. The only future non-economic damages awarded in the case at hand were those for future pain and suffering and disability. Therefore, prejudgment interest shall be awarded on all items of damages except for future pain and suffering, and the award for disability.
For the foregoing reasons, the judgment of the trial court, granting Texaco's Motion for Judgment Notwithstanding the Verdict, is reversed and set aside.
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff-appellant, Glenn Gray, and against defendant-appellee, Texaco, Inc., in the amount of $660,000.00. Legal interest is awarded from the date of the accident, June 5, 1989, on the sum of $560,000.00, and on the sum of $100,000.00 from the date of judgment. All costs of the trial court and this appeal are assessed to defendant-appellee, Texaco, Inc.
REVERSED AND RENDERED.

ON REHEARING
PER CURIAM.
We granted a limited rehearing to consider our prior judgment awarding legal interest on the sum of $560,000 from date of the accident and on the sum of $100,000 from date of judgment. Since the legal issues were decided de novo by this Court sitting as a court with admiralty jurisdiction under the Savings to Suitors clause, U.S. Code Title 28, Sec. 1333(1), we are not governed by state law rules governing interest awards. Canova v. Travelers Insurance, 406 F.2d 410 (5th Cir.1969). Since the Maritime law applies, the matter of pre-judgment interest lies within the sound discretion of the trial court. Canova, supra, Babineaux v. Lykes Bros. S.S. Co., Inc., 608 So.2d 659 (La.App. 3 Cir. 1992), McFarland v. Justiss Oil Co., 526 So.2d 1206 (La.App. 3 Cir.1988), Doucet v. Wheless Drilling Co., 467 F.2d 336 (5th Cir.1972), William v. Reading and Bates Drilling Co., 750 F.2d 487 (5th Cir.1985).
We re-affirm our original judgment allowing pre-judgment interest on all damages except future non-economic damages. To clarify our opinion we hold the date of judgment to be the date judgment was rendered by this Court, i.e. December 9, 1992, and amend the decree accordingly. In all other respects our original decree is affirmed.
ORIGINAL DECREE AMENDED AND RENDERED AS AMENDED.
NOTES
[*] Honorable Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.