UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-4711
_____


DOMINGO GUEVARA,

Plaintiff-Appellee,

versus

MARITIME OVERSEAS CORPORATION,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Eastern District of Texas
_____

(September 30, 1994)


Before GOLDBERG, GARWOOD and WIENER, Circuit Judges.

PER CURIAM:

In this case we uphold an injured seaman's recovery of damages under the Jones Act. Fifth Circuit precedent also compels us to uphold an award of punitive damages for the shipowner's failure to timely pay maintenance and cure.

**I.**

**Facts and Proceedings Below**

Plaintiff-appellee Domingo Guevara (Guevara) was injured on May 29, 1990, while serving as a member of the crew on the vessel OVERSEAS PHILADELPHIA, owned and operated by Guevara's employer, defendant-appellant Maritime Overseas Corporation (Maritime). The

crew was preparing the ship to sail from Freeport, Texas, and Guevara was helping to secure the gangway, the size of which required that it be lifted by the ship's crane. The task was being performed in the midst of considerable wind and rain. Guevara was standing on a catwalk on the vessel pursuant to the orders of the vessel's bosun, Guevara's superior, who was operating the crane. As the gangway was lifted, it swayed in Guevara's direction and the bosun ordered him to move away from where he was standing. But when Guevara tried to move, he momentarily caught the tread of his boot in the catwalk grating. Freeing himself, Guevara jumped from the catwalk to the deck below to avoid being hit by the gangway.

Guevara injured his knee in the fall. He promptly reported his injury to the third mate and was given assistance. Despite his injury, Guevara continued to work on the vessel (apparently to qualify for union benefits) for a period of four months. Upon the vessel's return to port, Guevara saw a doctor who diagnosed him as having a torn medial meniscus and a torn anterior cruciate ligament. Although initially Guevara was reluctant to undergo surgery, his knee was operated on in February 1991.

Guevara, through his attorney, made a number of formal demands on Maritime for maintenance and cure beginning on February 5, 1991.[1] Maritime, however, made no payment until at least June 24, 1991. Despite subsequent demands, Guevara did not receive his second and final payment until December 29, 1991.

---

[1] "Maintenance and cure" refers to a shipowner's ancient obligation to provide compensation (now often at the rate of $8.00 a day) and medical care to an ill or injured seamen until he has reached the point of "maximum recovery."

Guevara brought a negligence claim under the Jones Act, 46 U.S.C. App. § 688, and an unseaworthiness claim under general maritime law, against Maritime. He also sought punitive damages for Maritime's failure to pay maintenance and cure on a timely basis. The jury returned a verdict in Guevara's favor, finding Maritime negligent, the OVERSEAS PHILADELPHIA unseaworthy, and Guevara not negligent. The jury awarded Guevara $131,000 in compensatory damages for his May 29, 1990, injury, and $60,000 in punitive damages for Maritime's arbitrary and capricious failure to pay maintenance and cure. Maritime now appeals.

## II.

## Discussion

## A.

Maritime argues that the district court erred in denying its motions for judgment notwithstanding the verdict on Guevara's negligence and unseaworthiness claims. Maritime also challenges the jury's award of punitive damages for Maritime's failure to pay maintenance and cure. We first consider whether there is sufficient evidence to support the jury's finding that Maritime was negligent. In this regard, Maritime is obliged to swim upstream against a fast current because the standard of review to be applied to a jury verdict in a Jones Act case is highly deferential. The jury's verdict must stand unless there is a complete absence of probative facts to support it. *See, e.g., Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 266 n.9 (5th Cir. 1991).

There is enough evidence in the record to meet this lenient standard. Guevara's theory of liability is that he had been

3

standing on the catwalk at the direction of the bosun, who then lifted the gangway without first making sure that he (Guevara) was in a safe position. The captain of the vessel testified that the bosun is to blame if he performs such an operation without first ascertaining that none of his men are in harm's way.[2] The jury could have concluded from this testimony that the bosun, and hence Maritime as his employer, was negligent. Because we uphold the jury's finding that Maritime was negligent and therefore liable under the Jones Act, we need not decide whether the jury correctly found Maritime's vessel to be unseaworthy under the general maritime law.[3]

**B.**

We now turn to Maritime's challenge to the jury's award of punitive damages to Guevara. Maritime argues, first, that *Miles v. Apex Marine Corp.*, 111 S.Ct. 317 (1990), bars the recovery of

---

[2]   "Q.  And the bosun should make sure that his men are properly positioned before he allows the crane to lift up, correct, so nobody gets hurt?

A.  Yes.

Q.  And if someone is in harm's way, the bosun should stop the operation, correct?

A.  Yes.

Q.  And if the bosun doesn't stop the operation, it's the bosun's fault that the man gets hurt, correct?

A.  Yes."

[3]   The single finding of compensatory damages was not allocated or divided as between damages due to negligence and those due to unseaworthiness, nor was there any objection to the form of the charge or verdict in this respect; and, indeed, the evidence does not suggest any basis for such a division.

punitive damages for failure to pay maintenance and cure, and, second, that even if punitive damages are available in such circumstances, a reasonable jury could not have concluded that Maritime acted in an arbitrary and capricious manner. We will discuss the second issue first.

Under the law of this Circuit, a shipowner who refuses to pay maintenance and cure is subject to

> "an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees." *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987).

A shipowner becomes liable for punitive damages when its refusal to pay maintenance can be described as callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent. *See id*. In this case, the jury answered yes to the question whether Maritime "arbitrarily and capriciously failed to provide maintenance to the plaintiff, Domingo Guevara on a timely basis?" and awarded $60,000 in punitive damages.[4] A reasonable jury could have so concluded.

The parties stipulated that Guevara's attorney made formal demands for maintenance by letter on six occasions: February 5, 1991; February 26, 1991; April 4, 1991; June 7, 1991; August 21,

---

[4] The jury was not asked to award attorneys' fees or compensatory damages on account of Maritime's failure to pay maintenance and cure.

1991; and January 31, 1992. Maritime's first payment, for $448, was not received by Guevara until sometime after June 24, 1991.[5] Maritime's second payment, for $1,344, was not received by Guevara until December 29, 1991. Guevara argues that, because nearly five months passed between his initial demand and Maritime's first payment, there is adequate support for the jury's verdict. Maritime correctly argues that it was entitled to a reasonable period of time in which to investigate the legitimacy of Guevara's claim. *See McWilliams v. Texaco, Inc.*, 781 F.2d 514, 519 (5th Cir. 1986) ("Where doubt exists . . . a vessel owner may request reasonable documentation from a seaman before it commences payment of maintenance that may prove both lengthy and expensive"). However, that excuse is unavailable where a shipowner is guilty of "laxness in investigating a claim that would have been found to be meritorious." *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987). In *McWilliams*, the shipowner withheld maintenance payments until it received medical documentation of the seaman's claim; after receiving such documentation, the shipowner commenced payments "shortly thereafter." 781 F.2d at 519. Here, the medical records compiled by the physician treating Guevara's injury were forwarded to Maritime along with Guevara's February 5, 1991, and March 4, 1991, demands for maintenance, yet Maritime made no payment until several months later. In any event, even if the delay between Guevara's first demand and Maritime's first payment could be explained as a reasonable investigatory period, the jury

---

[5]    The record is unclear as to when Guevara actually received this payment; the date on the check was June 24, 1991.

was entitled to conclude that the six-month delay between Maritime's first payment and its second payment, received by Guevara practically on the eve of trial, could not. Under the facts here, since Maritime had commenced payment, the jury could properly find that the second delay could not be explained as time needed to investigate Guevara's claim.[6] Thus, the record supports the jury's award of punitive damages under the prevailing law of this Circuit.

## c.

Maritime also argues that Guevara's recovery of punitive damages is barred by the Supreme Court's decision in *Miles.* There, the parents of a seaman killed by a fellow crew member sought to recover damages for loss of society under general maritime law in a cause of action for unseaworthiness. A unanimous Court held that, although the wrongful death of a seaman is actionable under general maritime law, damages recoverable in such actions do not include loss of society. The second of these two holdings is of principal concern here, although the Court's analytical methodology was the same for each. Following the course first set by *Moragne v. States Marine Lines, Inc.*, 90 S.Ct. 1772 (1970), the *Miles* Court tackled the question of the availability of remedies for wrongful death under general maritime law by seeking guidance from comparable federal statutes.

> "We no longer live in an era when seamen and their loved
> ones must look primarily to the courts as a source of
> substantive legal protection from injury and death;

---

[6]  The evidence was not such as to compellingly show any legitimate reason for the long delay after June 24.

7

Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress." *Miles*, 111 S.Ct. at 323.

Then observing that neither the Jones Act nor the Death on the High Seas Act (DOHSA), 46 U.S.C.App. § 761, permits the recovery of nonpecuniary losses, such as loss of society, the *Miles* Court stated:

"It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." *Id*. at 326.

The Court stressed the value of establishing a uniform rule of damages applicable to the Jones Act, DOHSA, and general maritime law. *See id*.

Maritime's argument that *Miles* abrogates this Circuit's rule permitting the recovery of punitive damages in maintenance and cure cases obviously cannot rest upon the specific holding in *Miles*SQ that damages for loss of society are not recoverable in a general maritime cause of action for wrongful death. *Miles* did not involve maintenance and cure or punitive damages.[7] Of course, it could be

---

[7]  That *Miles* involved a claim for wrongful death whereas Guevara's injury was nonfatal is not a relevant distinction. We have already held that *Miles* bars recovery of nonpecuniary losses in general maritime actions alleging personal injury. *See Murray v. Anthony J. Bertucci Constr. Co.*, 958 F.2d 127, 129-30 (5th Cir.), *cert. denied*, 113 S.Ct. 190 (1992) (injured seaman; loss of society); *Michel v. Total Transp., Inc.*, 957 F.2d 186, 191 (5th Cir. 1992) (injured seaman; loss of consortium); *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 122 (5th Cir. 1994) (longshoreman injured on high seas; loss of consortium); *accord Smith v. Trinidad Corp.*, 992 F.2d 996, 996 (9th Cir. 1993) (per

8

that the logic if not the holding of *Miles* supports Maritime's argument. In the wake of *Miles*, in fact, four appellate courts have held that punitive damages now are unavailable under general maritime law. *See Horsley v. Mobil Oil Co.*, 15 F.3d 200 (1st Cir. 1994); *Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1454-59 (6th Cir. 1993); *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294 (Tex. 1993) (per curiam); *Sky Cruises, Ltd. v. Andersen*, 592 So.2d 756 (Fla. App.) (per curiam), *rev. denied*, 610 So.2d 551 (Fla.), *cert. denied*, 113 S.Ct. 466 (1992).[8] However, in each of these cases, plaintiff's claim for punitive damages was not based upon a cause of action for maintenance and cure. In another line of cases, several federal district courts have held that *Miles* does *not* preclude recovery of punitive damages for failure to pay maintenance and cure.[9] In contrast, we have found only one court

---

curiam) (agreeing with *Murray*); *Horsley v. Mobil Oil Co.*, 15 F.3d 200 (1st Cir. 1994) (injured seaman; loss of society).

[8] A number of federal district courts have reached the same conclusion. *See, e.g., Ellison v. Messerschmitt-Bolkow-Blohm*, 807 F.Supp. 39, 41 (E.D.Tex.1992); *La Voie v. Kualoa Ranch & Activity Club, Inc.*, 797 F.Supp. 827, 829-31 (D.Hawaii 1992); *In re Waterman Steamship Corp.*, 780 F.Supp. 1093, 1095-96 (E.D.La.1992); *In re Cleveland Tankers, Inc.*, 791 F.Supp. 679, 682 (E.D.Mich.1992); *In re Aleutian Enter. Ltd.*, 777 F.Supp. 793, 796 (W.D.Wash.1991); *Haltom v. Lykes Bros. Steamship Co.*, 771 F.Supp. 179, 181 (E.D.Tex.1991); *In re Mardoc Asbestos Case Clusters*, 768 F.Supp. 595, 599-600 (E.D.Mich.1991); *Rollins v. Peterson Builders, Inc.*, 761 F.Supp. 943, 949-50 (D.R.I.1991).

[9] *See, e.g., Ridenour v. Holland America Line Westours, Inc.*, 806 F.Supp. 910 (W.D.Wash.1992); *Anderson v. Texaco, Inc.*, 797 F.Supp. 531, 536 (E.D.La.1992); *Ortega v. Oceantrawl, Inc.*, 1992 U.S.Dist.Lexis 21374, at *6-7 (D.Alaska Oct. 8, 1992); *Howard v. Atlantic Pacific Marine Corp.*, 1992 U.S.Dist.Lexis 2474, at *4-5 (E.D.La. Feb. 28, 1992); *Bachu v. Int'l Marine Terminals*, 1991 U.S.Dist.Lexis 14485, at *3 (E.D.La. Sept. 26, 1991); *Rowan Companies, Inc. v. Badeaux*, 1991 U.S.Dist.Lexis 12355, at *4 (E.D.La. Aug. 28, 1991); *Collinsworth v. Oceanic Fleet, Inc.*,

9

which has held that *Miles* bars recovery of punitive damages in maintenance and cure cases. *See Gray v. Texaco, Inc.*, 610 So.2d 1090, 1096 (La. App.), *cert. denied*, 616 So.2d 686 (La. 1993).

The courts which have held that punitive damages are unavailable in a cause of action for unseaworthiness have reasoned that, because punitive damages are unavailable under either the Jones Act or DOHSA,[10] it would run counter to *Miles* to allow punitive damages under general maritime law. While there is great force to this argument, it is arguably not controlling in the context of maintenance and cure. Essentially a form of workers' compensation-like employee benefit, maintenance and cure has no counterpart in either the Jones Act or DOHSA.

A panel of this Court may overrule the existing law in the circuit if an intervening Supreme Court decision so requires. The implications of *Miles*, however, are not so direct as to allow this panel to depart from the Court's previous decisions that punitive damages are available in maintenance and cure cases.

### Conclusion

The jury's verdict is adequately supported by the evidence,

---

1991 U.S.Dist.Lexis 11759, at *9-10 (E.D.La. Aug. 19, 1991); *Odeco, Inc. v. Cornish*, 1991 U.S.Dist.Lexis 10827, at *4 (E.D.La. July 22, 1991).

[10] Only pecuniary damages are available under the Jones Act and DOHSA. *See Miles*, 111 S.Ct. at 325 (Jones Act); *Mobil Oil Corp. v. Higginbotham*, 98 S.Ct. 2010, 2013 (1978) (DOHSA). Punitive damages are nonpecuniary and are therefore unavailable under either Act. *See Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1347 (9th Cir. 1987); *Kopczynski v. The Jacqueline*, 742 F.2d 555, 560-61 (9th Cir. 1984), *cert. denied*, 105 S.Ct. 2677 (1985). *See also Horsley v. Mobil Oil Co.*, 15 F.3d 200, 203 (1st Cir. 1994); *Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1457 (6th Cir. 1993).

and the judgment thereon is supported by applicable precedent in this Circuit.  Accordingly, the district court's judgment is

AFFIRMED.

GARWOOD, Circuit Judge, concurring:

I fully join the Court's opinion, and append this separate writing merely to urge that the en banc court reexamine the availability of general punitive damages in maintenance and cure cases, particularly in light of the Supreme Court's opinion in *Miles v. Apex Marine Corp.*, 111 S.Ct. 317 (1990). That issue is squarely presented in this case.

In my view, *Miles* seriously calls into question the availability of punitive damages for nonpayment of maintenance and cure. If the First and Sixth Circuits, the Texas Supreme Court, and all the rest of the courts that have considered the matter, are correct that *Miles* bars recovery of punitive damages in a cause of action for unseaworthiness,[1] as I believe they are, then this Court en banc should seriously rethink its previous panel decisions allowing punitive damages in maintenance and cure cases. See *Gray v. Texaco, Inc*., 610 So.2d 1090, 1096 (La. App.), *cert. denied*, 616 So.2d 686 (La. 1983).

Both unseaworthiness and maintenance and cure are doctrines of general maritime law, and in the past we have looked to the availability of punitive damages under the one when deciding whether they are available under the other. In *In re Merry Shipping, Inc.*, 650 F.2d 622, 625 (5th Cir. 1981), we cited a First Circuit case allowing punitive damages in maintenance and cure actions in support of our holding that punitive damages are

---

[1] See our *per curiam* herein, note 8 and accompanying citations in text. See also, *id*. note 7 and note 10 and accompanying text.

12

recoverable in unseaworthiness actions.  Thus, it would be highly anomalous to allow punitive damages in the context of the contract-like maintenance and cure claims if such damages are unavailable in the context of the tort-like unseaworthiness claims.[2]

Furthermore, even though the Jones Act and DOHSA may not be closely analogous reference points in the *Miles* analysis with respect to maintenance and cure, the Longshore and Harbor Worker's Compensation Act (LHWCA), 33 U.S.C. §§ 901-950, may be.  It has been said that maintenance and cure "is to the seaman almost what workmen's compensation is to the land worker."  2 M. Norris, *The Law of Seamen* § 26:1, at 3 (4th ed. 1985).  The LHWCA, meanwhile,

---

[2]    Punitive damages are generally unavailable for breach of contract.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 355 (1979); 11 *Williston on Contracts* § 1340, at 209-11 (W. Jaeger 3d ed. 1968); 5 *Corbin on Contracts* § 1077, at 438-39 (1964).  That the duty to pay maintenance and cure derives from contract was first stated by Justice Story in *Harden v. Gordon*, 11 Fed. Cas. 480, 482 (C.C.D. Me. 1823) (No. 6,047).  *Accord Brister v. AWI, Inc.*, 946 F.2d 350, 360 (5th Cir. 1991) (Maintenance and cure "is implied in the employment contract between seaman and shipowner."); 2 M. Norris, *The Law of Seamen* § 26:2, at 3 (4th ed. 1985) ("Maintenance and cure is a contractual form of compensation given by the general maritime law.").  To be sure, the contract analogy has its limits.  In *Vaughan v. Atkinson*, 82 S.Ct. 997 (1962), Justice Douglas stated that "[m]aintenance and cure differs from rights normally classified as contractual," *id*. at 1000, and then quoted Justice Cardozo:  "Contractual it is in the sense that it has its source in a relation which is contractual in origin, but, given the relation, no agreement is competent to abrogate the incident." *Cortes v. Baltimore Insular Line*, 53 S.Ct. 173, 174 (1932).  Yet just because a shipowner's obligation to pay maintenance and cure cannot "be abrogated by a contractual provision," *Dowdle v. Offshore Express, Inc.*, 809 F.2d 259, 262 (5th Cir. 1987), does not mean that none of the rules of contract law pertain to maintenance and cure.  It has been held, for example, that the rate of maintenance and cure may be set in a collective bargaining agreement. *See Gardiner v. Sea-Land Serv., Inc.*, 786 F.2d 943, 948 (9th Cir.), *cert. denied*, 107 S.Ct. 331 (1986).  In sum, to the extent that the obligation to pay maintenance and cure is contractual in nature, allowing punitive damages for a breach thereof is anomalous.

13

"creates a worker's compensation scheme for certain maritime workers which is exclusive of other remedies and does not provide for punitive damages." *Miller*, 989 F.2d at 1457; *see* 33 U.S.C. § 905 (exclusiveness of LHWCA remedies). Generally workers' compensation schemes, whether state or federal, for seamen or land lubbers, do not permit injured workers to recover punitive damages. *See* 2A A. Larson, *The Law of Workmen's Compensation* § 65.37, at 12-36 (1987) ("punitive damages are of course not recoverable under a workers' compensation act"). *See also Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 813-14 (5th Cir. 1988).

Before examining the genesis of this Court's relevant jurisprudence, it will be helpful to provide an overview of the law in this area among the other circuits. In addition to the Fifth, the First, Second, and Eleventh Circuits have held (prior to *Miles*) that punitive damages are recoverable for nonpayment of maintenance and cure. *See Robinson v. Pocahontas, Inc.*, 477 F.2d 1048 (1st Cir. 1973); *Kraljic v. Berman Enterprises, Inc.*, 575 F.2d 412 (2d Cir. 1978); *Hines v. J.A. La Porte, Inc.*, 820 F.2d 1187 (11th Cir. 1987) (per curiam). In the Second Circuit, however, recovery is limited to the amount of attorneys' fees. *Kraljic*. The law in the Sixth[3] and Ninth[4] Circuits is unclear. The other circuits have no

---

[3] Relying on dicta in *Al-Zawkari v. American Steamship Co.*, 871 F.2d 585, 590 n.8 (6th Cir. 1989), one district court in the Sixth Circuit has held that "a claim for punitive damages under the doctrine of maintenance and cure is recognizable in this circuit." *Hoeffling v. United States Steel*, 792 F.Supp. 1029, 1030 (E.D.Mich. 1991). Another district court in that Circuit has said that a seaman may recover "an award of punitive damages *limited to attorney's fees*." *Owens v. Conticarriers & Terminals, Inc.*, 591 F.Supp. 777, 792 (W.D.Tenn.1984) (original emphasis). Still another has suggested that they are not recoverable at all.

14

law.

Although the right to maintenance and cure "stems from the ancient sea codes of the Middle Ages," 2 Norris, *supra* § 26:2, at 4-5, this Court had never upheld an award of punitive damages for nonpayment of maintenance and cure until 1984. *See Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110 (5th Cir. 1984). *See also McWilliams v. Texaco*, 781 F.2d 514, 519 & n.11 (5th Cir. 1986). *Holmes* deals with the issue in only an abbreviated fashion, the extent of *Holmes*' analysis being as follows:

> "In *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), the Supreme Court held that an employer's willful and arbitrary refusal to pay maintenance and cure gives rise to a claim for damages in the form of attorneys' fees in addition to the claim for general damages. Subsequent decisions have established that, in addition to such attorneys' fees, punitive damages for such refusal are available under the general maritime law. *See Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 625 (5th Cir. 1981) (collecting cases); *see also Robinson v. Pocahontas, Inc.*, 477 F.2d 1048 (1st Cir. 1973)." *Holmes*, 734 F.2d at 1118.

Thus, *Holmes* relied exclusively upon three cases: the Supreme

---

*See Mardoc Asbestos Case Clusters, supra*, 768 F.Supp. at 600 n.1. As noted, the Sixth Circuit held recently that general maritime law does not allow recovery of punitive damages in a cause of action for unseaworthiness. *See Miller, supra*. *Miller*, however, did not specifically discuss maintenance and cure claims.

[4] In *Sample v. Johnson*, 771 F.2d 1335, 1347 n.12 (9th Cir. 1985), *cert. denied*, 106 S.Ct. 1206 (1986), the Ninth Circuit stated in dicta that "[p]unitive damages are awardable, in some circumstances to a seaman where payment for maintenance and cure is wrongfully denied." Relying in part on *Sample*, two district courts in the Ninth Circuit have held that punitive damages are available. *See Ridenour, supra*, 806 F.Supp. at 911-13; *Nelsen v. Research Corp.*, 805 F.Supp. 837, 854 (D.Hawaii 1992) (dicta). Another district court, however, reached the opposite conclusion. *See La Voie, supra*, 797 F.Supp. at 831-32. *Ridenour* and *La Voie*, while reaching different conclusions, agreed that there is no Ninth Circuit case dispositive of the issue.

15

Court's *Vaughan*, this Court's *Merry Shipping*, and the First Circuit's *Pocahontas*. None of these cases, however, provides significant support for the rule announced in *Holmes*.

In *Vaughan*, the Supreme Court upheld an award of attorneys' fees where the shipowner had deliberately withheld maintenance and cure. The rationale underlying *Vaughan*'s holding is subject to considerable debate and we will discuss it at greater length later on. For now, it is enough to know this: *Vaughan* upheld an award of attorneys' fees, not punitive damages, and therefore does not directly support the holding of *Holmes*. *See* Reinschreiber, *Punitive Damages in Admiralty for Bad Faith Refusal to Provide Maintenance and Cure*, 15 San Diego L. Rev. 309, 313 (1978) ("the *Vaughan* decision affords no new basis for recovery of punitive damages"). Nor did *Holmes* dispute this fact; it said that, after *Vaughan*, *subsequent decisions* made punitive damages available.

The second case cited by *Holmes*, and the one upon which it seems to rely most heavily, is *Merry Shipping*. Like *Vaughan*, however, *Merry Shipping* does not squarely support the *Holmes* rule. *Merry Shipping* upheld an award of punitive damages for the wrongful death of a seaman in a cause of action for *unseaworthiness*. In support of its holding, *Merry Shipping* approvingly cited the First Circuit's *Pocahontas* decision, which, in the words of *Merry Shipping*, "upheld an award of punitive damages for a shipowner's willful and callous withholding of a seaman's maintenance and cure." 650 F.2d at 625. Yet this endorsement of the holding in *Pocahontas* is clearly dictum since *Merry Shipping* did not involve maintenance and cure. As one commentator has noted, "The *Holmes*

16

Court's authority for allowing an award of punitive damages is not readily apparent, because maintenance and cure was not at issue in *Merry Shipping*." Davis, *Punitive Damages for Maintenance and Cure*, 10 Mar. Law. 103, 108 (1985).

Furthermore, when one looks back on *Merry Shipping* with the benefit of *Miles*, it becomes clear that *Merry Shipping* is doubtful authority at best. The holding of *Merry Shipping*SQthat punitive damages are available under general maritime lawSQrested upon two assumptions, both of which were capsized by *Miles*. First, *Merry Shipping* stated that nonpecuniary losses are recoverable under general maritime law. *See* 650 F.2d at 626. That proposition, of course, was squarely rejected in *Miles*. *See* 111 S.Ct. at 325. Second, *Merry Shipping* argued that the unavailability of punitive damages under the Jones Act does not compel their unavailability under general maritime law. *See* 650 F.2d at 626. That reasoning, however, is flatly inconsistent with *Miles*' insistence upon uniformity in the availability of damages under general maritime law and statutes such as the Jones Act. *See* 111 S.Ct. at 323, 325. Thus, because of *Miles*, it would appear that *Merry Shipping* is no longer good law.

The last case cited by *Holmes* is the First Circuit's *Pocahontas* decision. To be sure, that case did squarely hold that punitive damages are available in maintenance and cure cases, and it was favorably cited in *Merry Shipping*. *Pocahontas*, however, suffers from the fact that it relied upon the *dissent* in *Vaughan*. *See Pocahontas*, 477 F.2d at 1051. As the Second Circuit pointed out in its *Kraljic* opinion:

17

"The [*Pocahontas*] court justified the punitive damage award primarily by relying on Mr. Justice Stewart's dissenting opinion in [*Vaughan v.*] *Atkinson* which, as we have indicated, would have awarded exemplary damages under traditional concepts not necessarily limited to the amount of counsel fees. The obvious difficulty with this approach is that the court followed the views of the dissenters in *Atkinson* and not the majority." *Kraljic*, 575 F.2d at 415.

*Holmes* made no mention of *Kraljic*, even though it was decided six years earlier. In *Kraljic*, the Second Circuit held that willful nonpayment of maintenance and cure entitles a seaman to recover punitive damages *limited to the amount of attorneys' fees*. The *Kraljic* court stated:

"The [*Pocahontas*] court, we believe, correctly perceived that both majority and minority opinions in *Atkinson* in essence found that punitive damages were awardable in maintenance and cure cases. The inescapable fact is, however, that the majority opinion in *Atkinson* limited that recovery to counsel fees despite the explicit view of the dissenters that no such curb be imposed." *Id.* at 415-16.

Finally, a brief word is in order about the Eleventh Circuit's *Hines* case, which was decided three years after *Holmes*. Recognizing that on the question of the availability of punitive damages, "*Vaughan* is not dispositive because in that case only a claim for attorney's fees was asserted," *Hines*, 820 F.2d at 1189, the *Hines* court choose to "[f]ollow[ ] the guidance of *Merry Shipping*", *id*., and allow punitive damages in maintenance and cure cases. Again, however, *Merry Shipping* is questionable authority at best.[5]

To sum up, the cases that *Holmes* relied upon cannot now

---

[5]    Two of the judges on the *Hines* panel were on the pre-split Fifth Circuit panel in *Merry Shipping*, which was authored by one of them.  *Hines* was a *per curiam*.

18

support the result in *Holmes*.  *Vaughan* awarded attorneys' fees, not punitive damages; *Merry Shipping* did not involve maintenance and cure and has probably been overruled by *Miles*; and *Pocahontas* was based upon the *Vaughan* dissent.  Of the cases that *Holmes* did not cite, *Kraljic* limits punitive damages to the amount of attorneys' fees and *Hines* relied upon the now-dubious *Merry Shipping*.  In arguable support of *Holmes*, there is one remaining possibility that should be considered, namely, that *Vaughan*, while only upholding an award of attorneys' fees, announced a principle broader than its result.  *Vaughan* is unquestionably the root of this entire area of law; hence, we now attempt to determine how broad *Vaughan* is.

*Vaughan*, a brief opinion by Justice Douglas, has been described as "ambiguous"[6] and "cryptic"[7]SQand rightly so.  What is clear is that Justice Douglas upheld an award of attorneys' fees to a seaman where his employer had deliberately withheld payment of maintenance and cure.  The confusion surrounds the theory under which Justice Douglas awarded the attorneys' fees.  On the one hand, the adjectives that Justice Douglas used to describe the employer's behaviorSQ"callous," "recalcitran[t]," "willful and persistent," *Vaughan*, 82 S.Ct. at 999SQimply that the award was meant to be a *punitive* sanction.  On the other hand, his statements that a seaman is entitled to recover "necessary expenses" and that the seaman "was forced to hire a lawyer and go to court to get what

---

[6]    1B E. Flynn, D. Cooper & G. Raduazzo, *Benedict on Admiralty* § 51, at 4-80 (7th rev. ed. 1991).

[7]    Robertson, *Judge Rubin's Maritime Tort Decisions*, 52 La. L. Rev. 1527, 1572 (1992).

was plainly owed him," *id*., suggest that the fees were meant to be a *compensatory* award for out-of-pocket expenses. As one commentator put it:

> "Yet *Vaughan* did not clearly articulate if such an award was compensatory or punitive. Initially, the Court cited *Cortes* for the proposition that an employer's failure to make timely payments of maintenance and cure may entitle the seaman to the recovery of necessary expenses, intimating that the award was compensatory. The Court went on to stress, however, that the defendant's failure to make the payments was willful and callous, language that lends itself to the view that the award was punitive." Maslanka, *Punitive Damages in the Admiralty*, 5 Mar. Law. 223, 228 (1980); *accord* Davis, *supra*, at 106.

The commentators are divided as to whether the *Vaughan* award was intended to be compensatory[8] or punitive[9] in nature.

Fortunately, in deciphering *Vaughan,* we are not confined to the text of that enigmatic opinion or the unexpressed intent of its author. Since *Vaughan* was decided in 1962, the Supreme Court has

---

[8]    *See* 6 J. Moore, Moore's Federal Practice ¶ 54.78[3], at 54–503 n.29 (2d ed. 1986) ("The [*Vaughan*] court found that . . . the expenses of the suit could rightly be treated as part of the compensatory damage."); *id*. at 54–504 n.30; 2 Norris, *supra* § 26:41, at 111 ("The allowance of counsel fees was justified by virtue of the inclusion of 'necessary expenses' as items of damage arising out of the suffering and physical handicap which follows the failure to give maintenance and cure."); Reinschreiber, *supra*, at 312 ("the [*Vaughan*] majority award[ed] attorney's fees as an item of compensatory damages").

[9]    *See* G. Gilmore & C. Black, The Law of Admiralty 313 (2d ed. 1975) (*Vaughan* "awarded what were essentially punitive damages under the name of counsel fees."); Mallor, *Punitive Attorney's Fees for Abuse of the Judicial System*, 61 N.C. L. Rev. 613, 632 (1983) ("Although the Supreme Court awarded the seaman attorneys' fees under the rubric of compensatory damages, it emphasized the role that defendant's bad faith had played in causing those damages."). That the award was punitive was also the view of Judge Rubin. *See Sanchez v. Rowe*, 870 F.2d 291, 293 (5th Cir. 1989) ("Fees were awarded [in *Vaughan*] on the basis of the shipowners' bad-faith response to the seaman's underlying claim."). Judge Rubin has been described as "an acknowledged master of the maritime field." Robertson, *supra*, at 1527.

20

cited it in seven cases. Each of these cases concerns the shifting of attorneys' fees; none of them concerns maritime law. In all seven cases, the Court has treated *Vaughan* as supporting an exception to the so-called "American Rule" that litigants generally must bear their own costs. In the first such case, Chief Justice Warren read *Vaughan* as establishing a compensatory basis for fee-shifting:

> "Limited exceptions to the American rule . . . have been sanctioned by this Court when overriding considerations of justice seemed to compel such a result. In appropriate circumstances, we have held, an admiralty plaintiff may be awarded counsel fees *as an item of compensatory damages* (not as a separate cost to be taxed)." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 87 S.Ct. 1404, 1407 (1967) (emphasis added).

Since *Maier Brewing*, however, *Vaughan* has now come to stand for the proposition that attorneys' fees may sometimes be awarded to a prevailing party when his opponent has acted in bad faith in the conduct of litigation.[10] As one commentator has said, *Vaughan* now "is uniformly cited as a foundational case to the so-called 'bad faith' exception to the American rule." Reinschreiber, *supra*, at 312.[11] The purely compensatory description of *Vaughan* has not been

---

[10] *See Summit Valley Indus., Inc. v. Local 112*, 102 S.Ct. 2112, 2114 (1982); *Roadway Express, Inc. v. Piper*, 100 S.Ct. 2455, 2464 (1980); *Runyon v. McCrary*, 96 S.Ct. 2586, 2601 (1976); *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 95 S.Ct. 1612, 1622 (1975); *F.D. Rich Co. v. United States*, 94 S.Ct. 2157, 2165 (1974); *Hall v. Cole*, 93 S.Ct. 1943, 1946 (1973).

[11] *Accord Lear Siegler, Inc. v. Lehman*, 842 F.2d 1102, 1118 (9th Cir. 1988) ("Although *Vaughan* sounded in admiralty, the Supreme Court subsequently construed the case as an example of bad faith conduct justifying an award of attorneys' fees in civil litigation generally."); Green, *From Here to Attorney's Fees*, 69 Cornell L. Rev. 207, 232 n.148 (1984) ("Both the Court and commentators have, in retrospect, characterized the *Vaughan* decision as involving the 'bad faith' exception to the American

aired in a majority opinion since *Maier Brewing*.[12]  In short, the Court's current view is that the fee award in *Vaughan* should be understood as a sanction for bad-faith conduct in litigation.

However, our knowledge that *Vaughan* involved a bad-faith fee-shift does not immediately tell us whether awards of that type are compensatory or punitive.  Although some have asserted that an award of attorneys' fees under the bad-faith exception to the American rule is compensatory,[13] the Supreme Court's view now may be otherwise.  In *Hall v. Cole*, 93 S.Ct. 1943 (1973), Justice Brennan stated:

> "Thus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  In this class of cases, *the underlying rationale of 'fee shifting' is, of course, punitive,* and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." *Id*. at 1946 (emphasis added; internal quotation marks omitted).

*Hall*'s reasoning was reaffirmed in the recent case of *Chambers v. NASCO, Inc.*, 111 S.Ct. 2123 (1991).  Quoting *Hall*, the *Chambers* Court said: "in the case of the bad-faith exception to the American

---

rule.").  Professor Moore calls the bad-faith interpretation of *Vaughan* "a revisionist view."  Moore, *supra*, at 54-506.  Be that as it may, the Supreme Court is obviously the final arbiter of the meaning of its precedents.

[12]    Justice Marshall, in a dissenting opinion, once revived the compensatory interpretation of *Vaughan*.  *See Alyeska*, 95 S.Ct. at 1633 ("the attorney's fee award [in *Vaughan*] was legitimately included as a part of the primary relief to which the plaintiff was entitled, rather than an ancillary adjustment of litigation expenses").  However, in a previous opinion written for the Court, Justice Marshall had endorsed the bad-faith view of *Vaughan*.  *See F.D. Rich Co.*, 94 S.Ct. at 2165.

[13]    *See* Reinschreiber, *supra*, at 313.

Rule, 'the underlying rationale of "fee-shifting" is, of course, punitive.'" *Id.* at 2137. Even three dissenters in *Chambers* cited *Hall* for the proposition that "the rationale for the bad faith exception is punishment." *Id*. at 2148 (Kennedy, J., dissenting). The *Chambers* Court specifically rejected the argument made by the petitioner that fee-shifting is compensatory in character. This argument, the Court said, "fails utterly," *id*. at 2137 n.15, because even though the fees may have a compensatory *effect*, their primary *purpose* is punitive. The Court analogized to fines for civil contempt, which may be compensatory in consequence but are punitive in design.

Based upon the above, it might seem that the Second Circuit in *Kraljic* got it right: the *Vaughan* award was a form of punitive damage, but one limited to the recovery of attorneys' fees. A careful reading of *Chambers*, however, belies the view that awards made under the bad-faith exception to the American rule are essentially punitive damages. The *Chambers* Court drew a distinction between fees awarded pursuant to the bad-faith exception, which are based upon a federal court's inherent power to sanction parties for their litigation behavior, and other "fee-shifting rules that embody a substantive policy, such as a statute which permits a prevailing party in certain classes of litigation to recover fees." *Id.* at 2136. In other words, bad-faith fee-shifting is not based on the outcome or merits of a suit, but rather "on how the parties conduct themselves during the litigation." *Id.* at 2137. While the *Chambers* majority opinion equivocated on the question whether a federal court has the

23

inherent power to impose sanctions for conduct relating to the merits of the case, rather than the conduct of the litigation, *see id.* at 2138 n.16, four justices were firmly of the view that bad-faith fee-shifting may not be used to sanction prelitigation conduct. Justice Scalia argued that the American rule is deeply rooted in our history and "prevents a court (without statutory authorization) from engaging in what might be termed *substantive* fee-shifting, that is, fee-shifting as part of the merits award. It does not in principle bar fee-shifting as a sanction for procedural abuse." *Id.* at 2140 (dissenting opinion; original emphasis). Likewise, Justice Kennedy, writing for himself and two others, argued that "[w]hen a federal court, through invocation of its inherent powers, sanctions a party for bad-faith prelitigation conduct, it goes well beyond the exception to the American Rule." *Id.* at 2148 (dissenting opinion).

The upshot of all this is the following: the bad-faith exception to the American rule, of which the *Vaughan* award was an example, is not in a true sense punitive damages. Punitive damages are awarded on the basis of the merits of a case, whereas bad-faith fee-shifting sanctions abuses of the litigation process. As the *Chambers* Court said, quoting from the Fifth Circuit decision below, "'[f]ee-shifting here is not a matter of substantive remedy, but of vindicating judicial authority.'" *Id.* at 2138 (quoting 894 F.2d at 705). This interpretation comports with the facts in *Vaughan*. Because the shipowner's liability for maintenance and cure was perfectly clear, it was an abuse of the litigation process to require him to "go to court to get what was plainly owed him under

24

laws that are centuries old." *Vaughan*, 82 S.Ct. at 999.

At the end of the day, one need not definitely resolve whether *Vaughan* awarded compensatory damages or established an exception to the American rule. Either way, its award clearly was *not* a punitive damages award and therefore *Vaughn* provides no support for the *Holmes* rule. *Vaughan* entitles injured seamen to recover attorneys' fees, or perhaps compensatory damages, when their employer unreasonably fails to pay maintenance on a timely basis. But in light of *Miles*, this Court should reconsider en banc whether punitive damages should be similarly available.