Barbara **SCARBOROUGH**, et al

v.

**CLEMCO INDUSTRIES** a/k/a Clemco–Clemintina Ltd, et al

No. Civ.A. 03–0087.

United States District Court, E.D. Louisiana.

May 16, 2003.

Stanley J. Jacobs & Jodi Jacobs Aam-odt, Jacobs, Manuel & Kain, New Orleans, LA, A. Remy Fransen, Fransen & Hardin, New Orleans, LA, for Plaintiff.

Roger D. Marlow, Hulse & Wanek, Covington, LA, Samule Milton Rosamond, III & Thomas W. Aycock, Crawford Lewis, Baton Rogue, LA, Dena Economou & Stacy S. Freel, Karbal, Cohen, Economou, Silk & Dunne, LLC, Chicago, IL, John P. Wolff, III & Kyle A. Ferachi, Keogh, Cox & Wilson, Baton Rouge, LA, James L. Pate & Ben L. Mayeaux, Laborde & Neuner, Lafayette, LA, Michael J. Juneau & Karen B. Levy, The Juneau Firm, Lafayette, LA, James M. Garner, Martha Y Curtis & Jacob A. Airey, Sher, Garner, Cahill, Richter, New Orleans, LA, for Defendant.

## ORDER AND REASONS

BERRIGAN, District Judge.

Plaintiffs, Barbara Scarborough and her two adult children, Rhonda Scarborough Halterlein and William Scarborough, Jr. ("Plaintiffs") have filed this lawsuit individually and on behalf of the decedent, William Scarborough alleging causes of action under the Louisiana general tort law, survival and wrongful death actions pursuant to La.C.C. 2315.1 and 2315.2. Plaintiffs claim the decedent died as a result of the negligence of named defendants, Pulmosan Safety Equipment Company's ("Pulmosan") and Clemco Industries ("Clemco"). Also, named as defendants and sued under the Louisiana Direct Action Statute, La. R.S. 22:655 are various insurance companies alleged to have issued policies of insurance covering the causes of action and damages alleged.[1]

On May 7, 2003, the Court heard Oral Argument on the following motions: (1) Century Indemnity Motion to Dismiss or Alternative Motion for Summary Judgment (Rec.Doc. 7);[2] (2) Pulmosan's Motion for Summary Judgment (Rec.Doc. 21); and Plaintiffs' Motion for Summary Judgment on Liability (Rec.Doc. 13). Because the factual and legal questions raised by all these motions are interrelated and interdependent, the Court treats them and the various oppositions and replies filed in response thereto as cross-motions for summary judgment in globo.

1. These insurance companies include: (1) Century Indemnity Company ("Century Indemnity"); (2) First State Insurance Company & New England Insurance Company, formerly known as New England Reinsurance Corporation, incorrectly named as New England Management Company (collectively "Hartford Insurers"); (3) Interstate Insurance Company ("Interstate"); and (4) Scottsdale Insurance Company ("Scottsdale").

2. The memorandum in support of Century Indemnity's motion is adopted in its entirety and urged in the following Motions to Dismiss or Alternative Motions for Summary Judgment urged by: (1) Hartford Insurers (Rec. Doc. 14); (2) Clemco (Rec.Doc. 10); and (3) Interstate (Rec.Doc. 9). Scottsdale has filed a response memorandum in support of Century Indemnity's Motion, however, Scottsdale has not technically moved. (Rec.Doc. 25).

## I. Background

William Scarborough died on March 21, 2002, allegedly due to respiratory failure as a result of silicosis. His spouse and adult children filed this state law wrongful death, survival and general Louisiana tort law action.[3] An earlier lawsuit alleging that as a result of the negligence of various defendant corporations the decedent had contracted silicosis, thus rendering him totally and permanently disabled was filed on August 15, 1977, in Section B of this Court before Judge Heebe in an action captioned, *William Scarborough v. Northern Assurance Co. of America, et al,* Civil Action No. 77–2523 (*Scarborough I* ). Final Judgment was entered on June 18, 1981, in favor of the decedent in the amount of $650,000 as just compensation for his contracting silicosis. (*Scarborough I,* Rec. Doc. 550). The jury found all four defendants in *Scarborough I* to be proportionally at fault, however, Judge Heebe found each defendant liable *in solido* on the entire judgment.[4]

At issue in the various motions urged by the defense and by Plaintiffs is (1) whether Judge Heebe applied admiralty law or Louisiana state law in determining the liability of the defendants, Pulmosan and Clemco; (2) whether the judgment in *Scarborough I* has preclusive effect on the instant matter; and (3) whether the uniform principle of *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) limits the remedies available to Plaintiffs in this action.

## II. Standard of Review

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a district court must accept the factual allegations of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *See Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993). Unless it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim," the complaint should not be dismissed for failure to state a claim. *Id.* at 284–285 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). However, conclusory allegations or legal conclusions masquerading as factual conclusions will not defeat a motion to dismiss. *See Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995) (citing *Fernandez–Montes,* 987 F.2d at 284).

Further, Federal Rule 12(b) states that when on a motion "to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b). Because the parties have introduced and/or made available to the Court the entire record in *Scarborough I* in support of these motions, the Court considers the motions under Rule 56.

The Court can grant a motion for summary judgment only when the " 'pleadings, depositions, answers to interrogatories,

---

3. For purposes of convenience the Court refers to all three causes of action as wrongful death.

4. The four defendants and their respective proportions of fault were: (1) Coating Specialist Inc. ("Coating Specialist") (36%); (2) Land and Marine Applicators ("L & M")

(24%); (3) Pulmosan (17%); and (4) Clemco (23%). Coating Specialist and Land & Marine are/were vessel owners/operators and Pulmosan and Clemco were designers, manufacturers and distributors of certain safety equipment for use in sandblasting. (*Scarborough I,* Rec. Doc. 550).

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Upon such a showing, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Id.* A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 996 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). When considering a motion for summary judgment, the Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Automobile Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986).

## III. Analysis

### A. Whether Judge Heebe applied federal admiralty law or Louisiana State law to Pulmosan and Clemco in *Scarborough I*

Although disputed by all Defendants to this action, there is no question that Judge Heebe applied Louisiana state law to both Pulmosan and Clemco in *Scarborough I.* By Minute Entry dated June 18, 1981, issued on the same date as the Final Judgment, Judge Heebe states that the Jones Act employers, Coating Specialist and L & M were held responsible for "their negligence and the unseaworthiness of their respective vessels," whereas Pulmosan and Clemco "were responsible to plaintiff because of their negligence and the defective design, manufacture and distribution of their products." (Rec. Doc. 7, Ex. A, Final Judgment at 2). Judge Heebe clearly de-lineated the jurisdictional circumstances under which the judgment was rendered and found that Pulmosan and Clemco were "sued by plaintiff in diversity and were found liable under Louisiana general tort law, i.e., negligence and products liability." (Id., Ex. A, June 18, 1981 Minute Entry at 2). Additionally, the Final Judgment awards legal interest from the date of judgment on 60% of the verdict (the part apportioned to Coating Specialist and L & M) pursuant to maritime law, and awards legal interest from the date of demand on the remaining 40% (the part apportioned to Pulmosan and Clemco) pursuant to Louisiana state law. (Id. at 3). Finally, Judge Heebe's instruction to the jury clearly distinguishes the claims against Pulmosan and Clemco as arising under Louisiana state law. (*See* Jury Instructions, Trans. at 2077–80, 2089–90).

Defendants' reliance on Judge Heebe's December 22, 1981 Order in response to certain post-trial motions to amend the Court's determination of joint and several liability is without merit. In the December Order, Judge Heebe found "this is a close case, but one which we are willing to concede in favor of defendants *for the purposes of deciding the issue before us* because given the result which we reach, we do not think that the decision would be different if we apply admiralty law rather than Louisiana law." (Rec. Doc. 7, Ex. A, December Order at 6) (emphasis added). The post-trial "issue" before the Court was "whether the adoption of comparative fault as the measure of liability among multiple wrongdoers is not inconsistent with the notion of solidary, joint and several, liability to the plaintiff." (Id. at 7). The December Order does not reverse or revoke the decision of the Final Judgment or the explanatory Minute Entry issued on the same date. Rather, in the December Order, Judge Heebe concludes that he cor-

rectly assessed the jurisdictional circumstances and correctly applied Louisiana law, however, the Court simply conceded that even if the proponents in the post-trial motions were correct regarding choice of law, the result regarding solidary, joint and several liability would be the same.

Because the Court finds that Judge Heebe applied Louisiana state law to both Pulmosan and Clemco in *Scarborough I*, Century Indemnity's Motion to Dismiss or Alternative Motion for Summary Judgment, joined and adopted by Hartford Insurers, Clemco and Interstate and Pulmosan's Motion for Summary Judgment are properly denied.[5]

### B. Whether Collateral Estoppel Precludes Relitigating the Element of Fault [6]

Pulmosan contends that if the Court finds that Louisiana law was applied in *Scarborough I* that Plaintiffs cannot claim offensive collateral estoppel as to liability based on the 1981 judgment, because the Louisiana Supreme Court has held that at the relevant time period at issue collateral estoppel did not exist under Louisiana state law. *Welch v. Crown Zellerbach Corp.*, 359 So.2d 154, 156 (La.1979) ("Collateral estoppel is a doctrine of issue preclusion alien to Louisiana law."); *Williams v. Divittoria*, 760 F.Supp. 564, 566–67 (E.D.La.1991); *Bruce v. Becnel*, 747 So.2d 647, 649 (La.App. 5th Cir.1999). Further, the creation of collateral estoppel by the State Legislature in 1991 expressly limited the scope of the new law to prospectively application only. *See* La.R.S. § 13:4231

█ Pulmosan submits that because issue preclusion in diversity is substantive, it is governed by state law. *Breeland v. Security Ins. Co.*, 421 F.2d 918 (5th Cir. 1969); *St Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir.2000); *Williams*, 760 F.Supp. at 566. The Court disagrees. Although a federal district court should apply state collateral estoppel principles when determining whether to give preclusive effect to an earlier state court judgment, "[w]hen a federal court sitting in diversity is considering the collateral estoppel affect of a prior *federal* judgment, this Circuit applies federal common law." *Wehling v. Columbia Broadcasting System*, 721 F.2d 506, 508 (5th Cir.1983) (quoting *Reimer v. Smith*, 663

---

**5.** These defense motions all argue that because Judge Heebe applied admiralty law to Pulmosan and Clemco in *Scarborough I*, Plaintiffs are herein collaterally estopped from relitigating that issue again. Defendants submit that as a result of the application of admiralty law in *Scarborough I*, Plaintiffs' instant claims arising out of the death of William Scarborough are governed by the pecuniary damage limits imposed by the Jones Act. *See generally e.g. Miles*. Because all pecuniary damages available to Plaintiffs for the wrongful death of the decedent, with the exception of burial costs, have already been assessed and paid by the satisfied judgment in *Scarborough I*, Defendants argued that Plaintiffs' claims should be dismissed with the exception of burial expenses.

**6.** The parties do not dispute that collateral estoppel applies when the following three elements are met: "(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir.1999). Nor do the parties dispute that offensive collateral estoppel requires a fourth equitable element that there exists "no special circumstance that would render preclusion inappropriate or unfair." *Copeland v. Merrill Lynch & Co. Inc.*, 47 F.3d 1415 (5th Cir.1995); *see also RecoverEdge*, 44 F.3d at 1290–91 n. 12. Finally, the parties do not dispute that the elements of collateral estoppel have been satisfied.

F.2d 1316, 1325 n. 9 (5th Cir.1981)) (emphasis in original).

In *Aerojet–General Corp. v. Askew,* 511 F.2d 710 (5th Cir.1975), the Fifth Circuit approved application of federal common law in diversity cases considering the res judicata affect of a prior federal judgment. In so doing, the Fifth Circuit expressly distinguished *Breeland* as involving the collateral effect of a prior criminal conviction. *Aerojet–General,* 511 F.2d at 715. Since that ruling, "[t]he underlying rationale of the *Aerojet–General* decision has been extended to cases involving collateral estoppel as distinguished from res judicata, and to preclude re-litigation of issues decided by a prior federal diversity judgment, in a subsequent federal case also based on diversity jurisdiction." *Vela v. Alvarez,* 507 F.Supp. 887 (S.D.Tex.1981) *citing e.g., Mooney v. Fibreboard Corp.,* 485 F.Supp. 242 (E.D.Tex.1980); *Flatt v. Johns Manville Sales Corp.,* 488 F.Supp. 836 (E.D.Tex.1980); *Willis v. Fournier,* 418 F.Supp. 265 (M.D.Ga.), *aff'd mem.,* 537 F.2d 1142 (5th Cir.1976). In adopting the *Aerojet–General* rationale, the district court in *Vela* acknowledged that *Breeland* was limited to prior criminal convictions. *Vela,* 507 F.Supp. at 890 n. 3. Accordingly, the Court joins other district courts in this circuit and narrowly construes *Breeland* to apply only to prior criminal convictions. Thus, under *Wehling,* federal common law controls in the case at bar and the Court grants preclusive effect to the prior *federal* judgment.

## C. Whether the Jury Finding in *Scarborough I* that the Decedent was a Seaman Invokes the *Miles* Uniform Principle in this Action

■ There is no question that in *Scarborough I* the jury expressly found that the decedent, William Scarborough was in fact a seaman while employed by Coating Specialist and L & M. (Rec. Doc. 21, Ex. B, Jury Interrogatories, Nos. 2 & 7). Pulmosan argues that Plaintiffs cannot assert that the parties are bound by the findings made in *Scarborough I* for collateral estoppel purposes and then pick and chose through the record to argue that the decedent was not a seaman. Pulmosan contends that the jury's prior finding that the decedent was in fact a seaman controls.

In *Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496, 1505 (5th Cir.1996), the Fifth Circuit interpreted *Miles* to have established a uniform rule for remedies available to seaman. "The wrongful death of a seaman is covered by the Jones Act." *Guevara,* 59 F.3d at 1506. It is well settled that recovery for non-pecuniary loss is not available to seamen or their survivors "under DOHSA, the Jones Act, or general maritime law." *Id.* at 1505. Additionally, the *Miles* uniform rule precluding recovery for non-pecuniary damages includes situations where a seaman's dependants sue a non-employer. *Thompson v. Cross Offshore Corp.,* Civ.A.No. 01–1914, 2001 WL 1297789, 2001 U.S. Dist. LEXIS 18045 (E.D.La., Oct.25, 2001).

Plaintiffs now argue the decedent was not a seaman with respect to the manufacturers/distributors of the sandblasting equipment, Pulmosan and Clemco. Further, Plaintiffs suggest that because their claims do not arise under the general maritime law, but instead arise under Louisiana state law that *Miles* and its progeny do not apply. In support, Plaintiffs rely on *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 116 S.Ct. 619 133 L.Ed.2d 578 (1996) (holding that general maritime law does not pre-empt state law wrongful death remedies in an action based on the death of a nonseafarer in territorial waters); *and Warren v. Sabine Towing & Transportation Co.,* 831 So.2d 517 (La. App. 3d Cir.2002) (finding Jones Act wid-

ow not precluded from obtaining non-pecuniary damages in wrongful death claim against third party manufacturers).

Specifically, Plaintiffs contend that there is no maritime nexus to the equipment manufactured and supplied by Pulmosan and Clemco because in deciding to apply state substantive law, Judge Heebe considered the "locality-plus" test articulated in *Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) and concluded that "there has been no evidence to suggest that sandblasting is a peculiarly maritime activity." (Rec. Doc. 7, Ex. A, December Order at 6). Thus, Plaintiffs submit that like Mr. Warren, the decedent was not a seaman with respect to Pulmosan and Clemco. The Court in *Warren* found:

> While Mr. Warren was a seaman covered by the Jones Act vis-a-vis his employer, he was not a seaman covered by the Jones Act vis-a-vis the manufacturer-defendants in this case. The fortuity of the third-party manufacturers' breach of duty occurring in the context of Mr. Warren's seaman employment duties rather than in the context of pleasure-seeking activities should not inure to the benefit of the third-party manufacturers so as to provide them a "safe harbor" to avoid nonpecuniary damages. Thus, under the facts of this case, we find Yamaha allows application of state-law wrongful death remedies, including nonpecuniary damages.

*Warren,* 831 So.2d at 537. First, as a threshold issue, the state court decision in Warren is not binding precedent on the Court. Second, although the Court appreciates the rationale behind the Louisiana appellate court decision in *Warren,* we also recognize certain inconsistencies in that decision coupled with a fundamental misapplication of *Miles.* Although it could be argued that the material facts of *Warren* can be cabined into the specific holding of *Yamaha,* the law according to *Miles* precludes the remedies afforded by the state court.[7]

■ Additionally, Plaintiffs' reliance on *Yamaha* for the proposition that non-pecuniary damages are available because of the prior finding of liability based on state law is misplaced. In *Yamaha,* a young girl, Natalie Calhoun was killed in a recreational jet ski accident, and subsequently her parents brought a wrongful death and survival action against the manufacturer of the jet ski for defective design and manufacture. The Supreme Court held that state court remedies were not displaced by the federal cause of action specifically because Calhoun was not a seaman and therefore she was not the kind of plaintiff contemplated by the uniform tort recovery scheme uniformly applied pursuant to *Miles.* Also, the Supreme Court limited its holding to accidents occurring within state territorial waters.

*Yamaha* does not overrule *Miles,* and in fact it expressly acknowledges that the *Miles* uniform recovery scheme under the Jones Act must be enforced. *See Yamaha,* 516 U.S. at 215, 116 S.Ct. 619 citing *Miles,* 498 U.S. at 30–36, 111 S.Ct. 317. The *Miles* uniform rule is applicable to "all actions for the wrongful death of a seamen whether under DOSHA, the Jones Act, or

---

7. *Warren* is contrary to *Miles,* because Mrs. Warren's wrongful death action was brought pursuant to the Jones Act and the general maritime law. *Miles* expressly holds that state law cannot supplement a federal maritime cause of action. The *Warren* court conflates general maritime jurisdiction with the application of maritime law. Critical to *Yamaha's* narrow holding is the fact that the Calhoun's cause of action arose under state law. In contrast, Mrs. Warren's cause of action arose under the Jones Act, which the Louisiana appellate court erroneously supplemented with state remedies.

the general maritime law." *Horsley v. Mobil Oil Corp.*, 15 F.3d 200, 202 (1st Cir.1994). In the case at bar, because the decedent was adjudicated a seaman, *Yamaha* is inapplicable. *See Williams v. Chemoil Corp.*, Civ.A.No. 01–2838, 2002 WL 662958 at *3 n. 2, 2002 U.S. Dist. LEXIS 7958 at *11 n. 2 (E.D.La., Apr.22, 2002) (Vance, J.).

The original Complaint in *Scarborough I* is entitled "Seaman's Complaint." (Id., Ex. A at 1). In this "Seaman's Complaint," the decedent referred to himself "as a seaman and as a sandblaster/painter and/or foreman and member of the crew of vessels." (Id. at ¶¶ III & IV). The decedent invoked the Court's jurisdiction over Pulmosan and Clemco pursuant to "the General Maritime Law and 28 U.S.C. 1332." (Id.¶ XII). Also, the decedent averred that "his injuries and illnesses occurred while plaintiff was a seaman." (Id. at ¶ XVI).

At trial in *Scarborough I,* the decedent vigorously advocated his seaman status, which his employers, Coating Specialist and L & M vigorously opposed. At the close of trial, counsel for the decedent reurged his motion for a directed verdict on the issue of seaman status stating:

> I think there is no question but that this gentleman enjoys the status as a seaman, as I pointed out earlier. He at all times, in doing his work, is attached and must, by necessity be attached to the vessel by a hose which permits the doing of his work, which is the sole and only purpose of the vessel, and that is sandblasting. And that in truth and fact, if he had been provided with the very equipment that makes the vessel unseaworthy, that is, the air-fed hose that he would be attached to the vessel by an air-fed hose that protects him from silicosis, and likewise attached to the vessel with a sand hose which allows him to perform the very purpose for which the vessel is in the sea, and that is, sandblasting.

(Trial Transcript, vol. VI, pp.2016–17). The Final Pre–Trial Order confirms that the factual basis for all claims made against all defendants in *Scarborough I,* including the factual basis for the claims of unseaworthiness against the vessel owners was the "inadequate and deficient tools, supplies, appliances, and equipment, and manned by improperly trained, deficient, and inadequate officers and crew," specifically that equipment manufactured and supplied by Pulmosan and Clemco. (*Scarborough I* Rec. Doc. 457, Final Pre–Trial Order at 11–12).

In *Yamaha,* the Supreme Court recognized that "[s]ection 7 of DOSHA states: 'The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter. This statement, by its terms, simply stops DOSHA from displacing state law in territorial waters.'" *Id.* at 215–16, 116 S.Ct. 619. Federalism concerns inherent in *Yamaha* suggest that Louisiana's interest in protecting it citizens from dangerous and defective products and product design with no specific maritime nexus are not displaced by federal statutory laws designed to create a uniform scheme for recovery under federal maritime law. "When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided." *Yamaha,* 516 U.S. at 215, 116 S.Ct. 619 *citing Miles,* 498 U.S. at 30–36, 111 S.Ct. 317. Thus, for actions sounding in substantive maritime law the available damages are well established to preclude non-pecuniary damages. However, the crux of *Yamaha'*s holding is that although federal statutory rights and remedies may not be supple-

mented by state rights and remedies under the jurisprudence of *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) and *Miles*, federal law does not displace those state rights and remedies unaffected or not prescribed by Congress.

The jurisprudence of federal admiralty jurisdiction and choice of law experienced a significant evolution during the period from the late 1970's until the early 1990's. In 1981, when Judge Heebe applied state substantive products liability law to both Pulmosan and Clemco the significant case-law controlling contemporary jurisprudence defining jurisdiction, choice of law and available remedies were formative and not as determined as they stand today. Notwithstanding the decision in *Miles*, this modern transformation has impacted the limits of federal maritime jurisdiction and federal recognition of state substantive products liability law. Consequently, if *Scarborough I* were decided today, there is no question that federal admiralty jurisdiction would be properly exercised over Pulmosan and Clemco and federal general maritime law would apply.

In 1981, Judge Heebe applied the locality-plus test of *Executive Jet* (1972) and found that admiralty jurisdiction did not apply to Pulmosan and Clemco because sandblasting was not unique to maritime endeavors. (*See* Rec. Doc. 7, Ex. A, December Order at 6). Yet, under the more broadly defined test recognized in *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1991) and in effect today, there is no question that admiralty jurisdiction would attach to these two defendants. In *Sisson*, a standard commercial washer/dryer caught fire on a pleasure yacht causing damage to vessels in a small marina. The Supreme Court found that admiralty jurisdiction existed because the fire *could* have affected maritime com-

merce. *See Sisson*, 497 U.S. at 361, 110 S.Ct. 2892, *quoting Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 n. 5, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) ("when a 'potential hazard to maritime commerce arises out of activity that bears a substantial relationship to traditional maritime activity ... admiralty jurisdiction is appropriate'"). Here, under the more liberal test in *Sisson*, injury to seamen by the development of silicosis is a potential hazard to maritime commerce and the sandblasting of offshore structures by vessel crews does bear a substantial relationship to traditional maritime activity.

Likewise, in 1981 Judge Heebe applied state products liability law to Pulmosan and Clemco, however, subsequent to *Scarborough I*, state substantive products liability law has been incorporated into the federal general maritime law. In *Pan–Alaska Fisheries, Inc. v. Marine Constr. & Design Co.*, 565 F.2d 1129, 1135 (9th Cir. 1977) the Ninth Circuit incorporated strict products liability concepts into federal maritime law. This incorporation was not expressly recognized by the Supreme Court until five years after *Scarborough I*. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986) ("We join the Courts of Appeals in recognizing products liability, including strict liability, as part of the general maritime law."). Therefore, today under a similar factual situation as in *Scarborough I*, a district court would apply general maritime law incorporating the principles of state substantive products liability law to defendants such as Pulmosan and Clemco. Additionally, after adoption of the *East River* standard, Judge Heebe's specific application of state substantive law to Pulmosan and Clemco bears no distinction because this law has been expressly incorporated into the federal general maritime law.

Accordingly, the jury finding in *Scarborough I* that the decedent was a seaman for statutory purposes invokes the *Miles* uniform principle in this case because he vigorously sought seaman status in the previous lawsuit and reaped the statutory benefits that flowed from that station. This is evident by the jury finding that his employers were 60% at fault. Had the decedent elected not to be considered a seaman, he presumably would not have been able to sue his employers and instead would have had to rely on workers' compensation.

Plaintiffs argue that the manufacturers of a defective product should not receive safe harbor and avoid payment of non-pecuniary damages simply because the injury happened to occur to a worker engaged in a maritime activity as opposed to one similarly engaged on land. Although the Court finds this rationale compelling in the abstract, it cannot overcome the fact that in this case, the seed of all of the decedent's causes of action, against all defendants in *Scarborough I*, including his claims of vessel unseaworthiness emanated from the same nucleus of operative facts, specifically the inadequate equipment designed, manufactured and supplied by Pulmosan and Clemco. In fact, there was no other factual basis for any cause of action in the previous lawsuit.

Plaintiffs cannot distance themselves now from the finding that decedent was a seaman in order to recover precisely that which Congress felt was properly forfeited in exchange for the privilege that seaman's status wrought. *See generally, Yamaha* (discussing rationale behind *Moragne* in aligning new standard of strict liability for unseaworthiness claims with negligence-based state wrongful death actions). Plaintiffs' argument sounds in equity, however, the Court presumes they would be equally unwilling to disgorge the $390,000 portion of the satisfied judgment, which was attributable to the decedent's employers.[8] Finally, the Court also finds that Judge Heebe's application of state substantive products liability law is not outside the scope of federal general maritime today, nor was it necessarily so at the time of his decision.

**D. Damages Available**

At Oral Argument, counsel for Plaintiffs admitted that in recognition of intervening Louisiana law precluding joint and several liability for defendants assigned percentages of fault, Plaintiffs now seek only 40% of the current damages, specifically those which are attributable to the fault of Pulmosan and Clemco.[9] Further, counsel for Plaintiffs admitted that absent their claim for non-pecuniary damages, all possible pecuniary damages, with the exception of

8. Incidentally, for a variety of reasons not germane to this proceeding, Pulmosan and Clemco paid a significant portion of the employer's share. However, that fact has no bearing on the Court's decision.

9. In *Scarborough I*, the jury found Pulmosan and Clemco to be collectively at fault for 40% of the decedent's injury. *See* n.4, *supra*. By 1987 La. Acts No. 373, § 1, effective September 1, 1987, the Louisiana legislature amended La.C.C. Art. 2324 to eliminate solidary liability for certain joint tortfeasors. Amended subsection 2324(B) states that except for situations involving conspiracy to commit an intentional or willful act, "[a] joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable." La.C.C. Art. 2324(B).

burial costs, were previously merged into the satisfied 1981 judgment.[10]

The Court agrees. *See Williams*, 2002 WL 662958 *citing, Cruz v. Hendy Int'l Co.*, 638 F.2d 719, 722 n. 1 (5th Cir.1981) *rev'd on other grounds by Michel v. Total Transportation, Inc.*, 957 F.2d 186, 191 (5th Cir.1992). In *Williams*, Judge Vance determined that a spouse's claim for loss of support was improper because her husband was entitled to recover the loss of future wages, which are available for her support. Likewise, Judge Vance found the wife's loss of services claim improper "because the services that would have been provided to the marital partnership are likewise embraced by the injured spouse's claim." *Id.* at *3.

### E. Causation & Issues Particular to Insurers

In the interest of completeness the Court addresses two final issues. At Oral Argument, Plaintiffs conceded and the Court agrees that genuine issues of material fact remain in dispute concerning the decedent's cause of death that preclude summary judgment on liability. Causation, an essential element in the determination of liability is not ripe and some discovery is in order.

Additionally, Plaintiffs conceded and the Court agrees that they are not entitled to summary judgment against any of the defendant insurance companies because Plaintiffs have failed to provide the requisite evidence for summary judgment purposes particular to the defendant insurers. Under Louisiana law, "the burden in an action on an insurance contract is on plaintiff to establish every fact in issue which is essential to his cause of action or right of recovery, including existence of policy sued on, its terms and provisions, and that his claim is within its coverage." *B.T.U. Insulators, Inc. v. Maryland Casualty Co.*, 175 So.2d 899 (La.App. 2d Cir.1965), *citing, Boyd v. White*, 123 So.2d 835 (La.App. 2d Cir.1960); *see also Barber v. Best*, 394 So.2d 779 (La.App. 5th Cir.1981).

### IV. Conclusion

There is no question that Judge Heebe applied Louisiana state substantive law against Pulmosan and Clemco in *Scarborough I*. Because this determination issued from a prior federal judgment, it has preclusive effect on the instant matter. Further, the Court finds that the particular state substantive law, which Judge Heebe applied as against Pulmosan and Clemco is incorporated into the federal general maritime law. Additionally, the Court determines that the jury finding in *Scarborough I* that the decedent was a seaman for statutory purposes is controlling in the instant matter for reasons stated above. Therefore, under the uniform rule expressed in *Miles*, Plaintiffs cannot supplement their claim of wrongful death with state law remedies. Non-pecuniary damages are not available.

Additionally, the Court finds that with the exception of burial costs, all available pecuniary damages have been fulfilled previously by the satisfied judgment in *Scarborough I*. Because Plaintiff has conceded that Pulmosan and Clemco are only responsible for 40% of the existing pecuniary damages, the Court finds that this 40% appropriation represents their total remaining potential liability.

Accordingly, **IT IS ORDERED** that the Motions to Dismiss or Alternative Motion for Summary Judgment submitted by:

(1) Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Com-

---

10. Plaintiffs concede that their survival action is properly dismissed.

pany of North America, incorrectly named as ACE USA (Rec.Doc. 7);

(2) First State Insurance Company & New England Insurance Company, formerly known as New England Reinsurance Corporation, incorrectly named as New England Management Company (Rec.Doc. 14);

(3) Clemco Industries (Rec.Doc. 10); and

(4) Interstate Insurance Company (Rec. Doc. 9) are hereby DENIED.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment submitted by Pulmosan Safety Equipment Company (Rec.Doc. 21) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment on Liability (Rec.Doc. 3) is hereby **DENIED.**