United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 18, 2004**

Charles R. Fulbruge III
Clerk

REVISED NOVEMBER 22, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30985
_____

Barbara Scarborough, Individually
and on behalf of decedent William A.
Scarborough; Rhonda Scarborough
Halterlein, individually and on behalf of
decedent William A. Scarborough;
William Scarborough, Jr., individually
and on behalf of decedent William A.
Scarborough

Plaintiffs-Appellants

CLEMCO INDUSTRIES, also known as Clemco-Clemintina Ltd; ET AL

Defendants

-vs-

Clemco Industries, Inc., a.k.a. Clemco-Clemintina
Ltd.; Pulsoman Safety Equipment Company;
Century Indemnity Company; as
successor to CCI Insurance Company as
successor to Insurance Company of North
America;

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES and WIENER, Circuit Judges, and LITTLE[*], District Judge.

LITTLE, District Judge:

## I. FACTUAL AND PROCEDURAL HISTORY

This appeal arises from the district court's judgment dismissing the claims for nonpecuniary damages of Appellants, Barbara Scarborough, Rhonda Scarborough, and William Scarborough, Jr. ("Appellants"). See Scarborough v. Clemco Indus., 264 F. Supp. 2d 437 (E.D. La. 2003) (stating the reasons upon which the district court dismissed the claim for nonpecuniary damages). Appellants had sued, inter alia, Clemco Industries, Inc. ("Clemco"), Pulsoman Safety Equipment Co. ("Pulsoman") and Century Indemnity Co. ("Century") (collectively "Appellees"), individually and for damages they sustained as a result of William Scarborough's wrongful death.

Scarborough worked aboard sandblasting vessels between 1959 and 1967. These vessels maintained the protective coatings of offshore oil platforms through the use of abrasive sandblasting. The equipment used in this procedure included sand pots located within the hull of the vessel, compressors located on the deck of the vessel, hoses that were connected to the compressor and brought aboard the platforms, and hoods worn by the decedent while sandblasting. It is alleged that the hoods worn by Scarborough while sandblasting were manufactured by Pulsoman and Clemco. The hoods were allegedly defective and caused Scarborough to inhale silica and other materials. The inhalation of these materials caused Scarborough to develop silicosis.

In 1977, Scarborough brought suit in the United States District Court for the Eastern District of Louisiana against his employer, Appellees, and certain insurers alleging that their negligence had

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

caused him to develop silicosis and that he was permanently disabled. <u>Scarborough v. N. Assurance Co., et al.</u>, No. 77-2523 (E.D. La. 1977) (Heebe, J.) ("<u>Scarborough I</u>"). The jury in that case returned a $650,000 verdict in Scarborough's favor. The jury's findings of fact included, <u>inter alia</u>, that Scarborough was a Jones Act seaman, a status he sought, and that the negligence of his employer and the manufacturers of vessel equipment caused his disability when they provided equipment that rendered the vessel unseaworthy.

Scarborough died of respiratory failure on 21 March 2002. Approximately ten months later, Appellants brought suit against a majority of the <u>Scarborough I</u> defendants for wrongful death, arguing that the defendants were precluded by the doctrine of collateral estoppel from rearguing the issue of their liability for causing Scarborough to develop silicosis. <u>Scarborough v. Clemco Indus.</u>, 264 F. Supp. 2d 437 (E.D. La. 2003) ("<u>Scarborough II</u>"). The <u>Scarborough II</u> court, in an order addressing various cross motions for dismissal and summary judgment, made the following pertinent findings:

> 1. Appellants' cause of action against Clemco and Pulsoman for wrongful death arises under maritime law and is subject to federal admiralty jurisdiction.
>
> 2. Appellants are precluded by the doctrine of collateral estoppel from arguing that Scarborough was not a Jones Act seaman.
>
> 3. Under the uniformity principle announced in <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19, 29 (1990), a Jones Act seaman and his survivors may not recover nonpecuniary damages in a wrongful death suit against a non-employer third party.

264 F. Supp. 2d at 447. The motions for dismissal and summary judgment were denied in the district court's Order and Reasons entered on 16 May 2003 because there were material issues of fact in connection with Appellants' pecuniary damages claims that were in dispute. <u>Id.</u> After the pecuniary damages claims were settled, however, the motion to dismiss was granted by the district court in its

3

Final Judgment entered on 1 October 2003.

Appellants now appeal two legal conclusions, contained in the district court's Order and

Reasons, based upon which it later dismissed Appellants' claims:

> 1) Appellants' claims against Clemco, Pulsoman, and Century are subject to federal admiralty jurisdiction.

> 2) A Jones Act seaman's survivors may not recover nonpecuniary damages against a non-employer third party in a maritime wrongful death action.

As explained below, we affirm the trial court.

## II. DISCUSSION

A summary judgment granting a motion to dismiss and the legal conclusions upon which it

is based are reviewed de novo. Vais Arms, Inc. v. Vais, 383 F.3d 287, 291 (5th Cir. 2004). "When

de novo review is compelled, no form of appellate deference is acceptable." Salve Regina College

v. Russell, 499 U.S. 225, 238 (1991).

### A.     Federal Admiralty Jurisdiction

Determinations of the applicability of federal admiralty jurisdiction are governed by the two

part test adopted by the Supreme Court in Sisson v. Ruby, 497 U.S. 358 (1990) ("Sisson").

> After Sisson, then, a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship

4

to traditional maritime activity."

Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995) (citations omitted).

### i. The Location Test

The location requirement for invocation of federal admiralty jurisdiction can be satisfied in two ways: 1) showing that the tort occurred on navigable water, or 2) showing that the injury was caused by a vessel in navigable water. Id. at 534-35. Appellants argue that Scarborough's injuries were not caused by a vessel on navigable water.

What actually caused the harm to Scarborough was the inhalation of silica and other particles. These deleterious materials were created when sand stored in a sand pot in the hull of the vessel on which Scarborough worked was forced, by means of an air compressor located on the deck of the vessel, through a hose and out onto whatever surface Scarborough was trying to maintain. The appurtenances of the vessel, therefore, were one of the 'but for' causes of the injury to Scarborough. For the vessel to be a cause of Scarborough's injuries under Sisson, however, the vessel must have been a proximate cause of his injuries. Id. at 537-38. In this case, it appears that the hoods and masks produced by Appellees proximately caused the injuries to Scarborough. Therefore, only if the hoods and masks are themselves found to be appurtenances of the vessel can the location test be met under this prong. The court does not, however, need to address the question of whether the masks and hoods here at issue were appurtenances of the vessels upon which Scarborough worked.

Even if the hoods and masks are not appurtenances of the vessels on which Scarborough

5

worked, the first means for meeting the location test is satisfied because the tort occurred on navigable water. Appellants argue that the facts of this case do not support a finding that the tort occurred on navigable water. They base this contention on the assertion that the sandblasting that ultimately injured Scarborough was done on fixed offshore platforms that are considered to be land under the Outer Continental Shelf Lands Act ("OCSLA"). 43 U.S.C. §§ 1331-1356a (2004). Appellants' argument, however, is undermined by Scarborough's own testimony during Scarborough I. When asked if he had to "get on the rig to sandblast," Scarborough stated that although sandblasting was usually done on the rig, "we occasionally blasted off the boat" when "working around the edge of the water line." Similarly, Scarborough testified that some of the offshore rigs upon which he worked were not fixed. Given that Scarborough's injury developed over a period of eight years, when he worked to some extent around the edge of the water line and on platforms not fixed to the ocean floor, Appellants' argument that the tort did not occur on navigable water is less than persuasive.[1]

### ii. The Connection Test

The connection test for invocation of federal admiralty jurisdiction has two requirements. First, the activity at issue must be of a sort with potential to disrupt maritime commerce. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). Second, a court must

---

[1] It should be noted that although Appellants are correct in their contention that Judge Heebe found that the assertion of federal admiralty jurisdiction was not warranted in Scarborough I, that determination was not based on a finding that the location of the tort was not a maritime location. Instead, Judge Heebe based his determination on the fact that sandblasting is not a peculiarly maritime activity. As noted by the district court in Scarborough II, under Sisson, invocation of federal admiralty jurisdiction is determined now using a different test.

determine whether the general character of the activity giving rise to the incident bears a substantial relationship to particularly maritime activity. Id. Before determining if the activity at issue is of a sort with potential to disrupt maritime commerce, courts should characterize the activity at issue at an "intermediate level of generality." Id.

Appellants argue that the proper characterization of the activity here at issue is "injury to a worker located on a statutory island." Such a characterization fails to take into account the district court's binding judgment that the Scarborough I jury's determination that Scarborough was a Jones Act seaman precludes Appellants from now arguing that he was a general maritime worker under OCSLA. Similarly, Appellants neglect to take into account the fact that a significant portion of the work performed by Scarborough was done on navigable water.

A more reasonable and fair description of the activity at issue at an intermediate level of generality would be "injury to a Jones Act seaman due to the negligence of a non-employer." Using such a description, it is clear that the sandblasting activity is of the sort with potential to disrupt maritime activity. Therefore, the first requirement of the connection test is met.

The second requirement of the connection test is that the general character of the activity giving rise to the incident must show a substantial relationship to particularly maritime activity. Id. In Grubart, however, the Supreme Court held that "as long as one of the putative tortfeasors was engaged in traditional maritime activity, the allegedly wrongful activity will 'involve' such traditional maritime activity and will meet the second nexus prong." Id. at 541. Given that Scarborough's employers were found liable for negligence under the Jones Act, in that the employer failed to provide safe and protective gear, it is clear that one of the tortfeasors in this case was involved in traditional maritime activity.

7

Appellants argue, however, that the views expressed by Justice O'Connor in her concurrence in the Grubart decision suggest that this court should not follow the plain language of the majority's decision, but should instead interpret it as *permitting* federal courts to find that admiralty jurisdiction exists as to a non-maritime party when one of the tortfeasors is involved in maritime activity and the traditional tests for impleader and supplemental jurisdiction are met as to the non-maritime party.[2] Justice O'Connor's concurrence, which addresses only this issue, is just that – a concurrence and not a part of the majority opinion for a reason. The majority opinion in Grubart stated: "The substantial relationship test is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." Id. at 541. Justice O'Connor's concurrence does not provide this court with a sufficient justification for ignoring the plain language of the Grubart majority. Therefore, the court finds that a substantial relationship to maritime activity exists in this case.

Because the Sisson test is satisfied, federal admiralty jurisdiction exists over the claims by Appellants.

---

[2] O'Connor's concurrence reads in pertinent part:

I concur in the Court's judgment and opinion. The Court properly holds that, when a court is faced with a case involving multiple tortfeasors, some of whom may not be maritime actors, if *one* of the putative tortfeasors was engaged in traditional maritime activity alleged to have proximately caused the incident, then the supposedly wrongful activity 'involves' traditional maritime activity. The possible involvement of other, nonmaritime parties does not affect the jurisdictional inquiry as to the maritime party. I do not, however, understand the Court's opinion to suggest that, having found admiralty jurisdiction over a particular claim against a particular party, a court *must* then exercise admiralty jurisdiction over *all* the claims and parties involved in the case. Rather, the court should engage in the usual supplemental jurisdiction and impleader inquiries.

Grubart, 513 U.S. at 548 (O'Connor, J., concurring).

8

**B. Does the <u>Miles</u> uniformity principle prevent the recovery of nonpecuniary damages in a suit brought by a Jones Act seaman or his survivors against a non-employer third-party?**

In <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19, 29 (1990), the Supreme Court recognized a general maritime cause of action for the wrongful death of a seaman. The Court based this decision on the reasoning of <u>Moragne v. States Marine Lines, Inc.</u>, 398 U.S. 375 (1970). The <u>Miles</u> court, however, found that <u>Moragne</u> did not entertain the issue of the scope of damages recoverable in a maritime wrongful death action. <u>Miles</u>, 498 U.S. at 29. In addressing this issue, the Court held that "there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman."[3] <u>Id.</u> at 32. In so holding, the Court said that it was "restor[ing] a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." <u>Id.</u>

The plain language of <u>Miles</u> encompasses the factual scenario before the court today. Scarborough, at his own request, was found to be a Jones Act seaman, Appellants have brought a wrongful death action, which lies under general maritime law. Appellants, however, try to distinguish this case from <u>Miles</u> by arguing that the principle of uniformity announced in that decision is not intended to reach the facts of this case.

The first argument with which Appellants attempt to distinguish this case from <u>Miles</u> is based on <u>Yamaha Motor Corp. v. Calhoun</u>, 516 U.S. 199 (1996). In <u>Yamaha</u>, the Court found that state statutes that allow nonpecuniary damages are not displaced by federal admiralty law in state territorial waters. In doing so, the Court distinguished <u>Yamaha</u> from <u>Moragne</u>, saying that case "centered on the extension of relief, not the contraction of remedies." <u>Id.</u> at 214. The Court's holding in <u>Yamaha</u>,

---

[3] We specially mention that the <u>Miles</u> case included a non-employer as a party defendant.

however, was limited to non-seafarers in territorial waters. This case deals with neither a non-seafarer nor territorial waters.

Appellants further argue that this case is analogous to Yamaha because Judge Heebe, in Scarborough I, applied state products liability law to the claims against Pulsoman and Clemco. The district court, however, correctly noted that since the time of Judge Heebe's ruling, products liability law has been incorporat ed into the general maritime law. Scarborough v. Clemco Indus., 264 F. Supp. 2d 437, 445 (E.D. La. 2003) (citing East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 865 (1986)). Today, Scarborough's claims against Pulsoman and Clemco would fall under general maritime law.

Scarborough was judicially determined to be a Jones Act seaman, injured outside of territorial waters. He sued on a cause of action that arises under general maritime law. There are few similarities between this case and Yamaha. Appellants' argument that Yamaha and not Miles should control, therefore, is rejected.

The second argument Appellant makes in an attempt to distinguish this case from Miles centers on the fact that the defendants are not Scarborough's employers, but are instead non-employer third parties. A seaman may bring suit under the Jones Act only against his employers. Appellants would have this court look beyond the plain language of Miles and interpret that case as applying only to suits brought against a seaman's employers because, through the Jones Act, Congress has not addressed the issue of non-employer liability.[4]

District courts within this circuit are split on the issue whether the Miles uniformity principle

---

[4] It should be noted that Miles has been interpreted as preventing the recovery of nonpecuniary damages in personal injury suits brought by seamen, as well as wrongful death claims. Murray v. Anthony Bertucci Constr. Co., 958 F.2d 127 (5th Cir. 1992).

10

limits the recovery of a seaman to pecuniary damages in all cases or only in cases in which suit is brought against the seaman's employer. See, e.g., Stogner v. Cent. Boat Rentals, Inc., 326 F. Supp. 2d 754, 759 (E.D. La. 2004) (holding that Miles does not preclude the recovery of nonpecuniary damages in personal injury suits by Jones Act seaman against non-employer third parties); Rebstock v. Sonat Offshore Drilling, 764 F. Supp. 75, 76 (E.D. La. 1991) (holding that Jones Act seaman status has no relevance in allowing a seaman recovery under general maritime negligence law against a non-employer third party); Trident Marine, Inc. v. M/V Atticos, 876 F. Supp. 832, 837 (E.D. La. 1994) (holding that loss of society damages are not available to the survivors of a Jones Act seaman in suits against non-employer third parties). In this case, the district court held that "the Miles uniform rule precluding recovery for nonpecuniary damages includes situations in which a seaman's dependents sue a non-employer." Scarborough v. Clemco Indus., 264 F. Supp. 2d 437, 442 (E.D. La. 2003).

In Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1506 (5th Cir. 1995) (en banc), this court articulated the procedure for determining whether the Miles uniformity principle limits the available damages in a particular case.

> In order to decide whether (and how) Miles applies to a case, a court must first evaluate the factual setting of the case and determine what statutory remedial measures apply, if any, in that context. If the situation is covered by a statute like the Jones Act or DOHSA, and the statute informs and limits the available damages, the statute directs and delimits the recovery available under the general maritime law as well . . . .The general maritime law will not expand the available damages when Congress has spoken to the relief that it deems appropriate or inappropriate.

Id. The Guevara court found that the Miles decision was itself a perfect example of this approach. The Miles court found that the factual setting in that case was the wrongful death of a seaman, that the wrongful death of a seaman was covered by the Jones Act, and that even though suit was brought

11

under general maritime law and not under the Jones Act, the court was still obliged to follow the Jones Act policy of limiting damages in such cases to pecuniary losses.

As mentioned above, Appellants argue that because this suit is one against a non-employer, the facts of this case do not fall within the class of scenarios with which the Jones Act is concerned, and, therefore, the Miles uniformity principle does not apply. Miles characterized the conduct with which it was concerned as the wrongful death of a seaman, however, and this language guides us in the case we now consider.

The real issue for our purposes, though, is whether the principles articulated in Guevara for the application of Miles require this court to characterize the conduct we now explore in a more specific manner than the Supreme Court did in Miles. A fair reading of Guevara requires us to determine whether the facts fall under the remedial scheme of any statute that would prohibit this court from describing the facts of this case as simply the wrongful death of a Jones Act seaman. In this case, since non-employers are not subject to the remedial measures of the Jones Act, the Guevara principles cannot be met. It would be improper to try to avoid this result by describing the conduct involved in over-generalized terms.

Even though the Guevara court's principles for application of Miles may not be met in this case, Guevara still instructs that this court should find that nonpecuniary damages are not available. Guevara, 59 F.3d at 1513. In Guevara, this court found that no Congressional remedial scheme prohibited the award of nonpecuniary damages in general maritime suits for maintenance and cure. Id. The court still found, however, that nonpecuniary damages should not be allowed based on two factors. First, although no Congressional act was directly applicable, the court found that Congressional acts applied to highly analogous factual scenarios and that the judiciary should not

12

allow more expansive remedies in a judicially created cause of action than Congress had allowed in related remedial schemes. Id. Second, the court found that a concern for uniformity in federal admiralty law, as strongly expressed in Miles, militated against allowing punitive damages in one class of maintenance and cure actions but not in another. Id. Similar concerns are applicable in this case.

The facts in this case are analogous to causes of action brought pursuant to the Jones Act. It would be improper for this court to allow the surviving spouse and heirs of a Jones Act seaman to recover nonpecuniary damages in this case when Congress has disallowed the recovery of identical damages in a Jones Act suit. The genesis of Appellants' claims is maritime through and through. Miles plainly limits recovery to pecuniary damages. We will not retreat from the bright line directive of Miles. The Miles opinion is concerned with uniformity in the damages recoverable by a Jones Act seaman and his survivors, not with uniformity of the types of damages to which various defendants are subjected.[5]

For these reasons, the court finds that neither one who has invoked his Jones Act seaman status nor his survivors may recover nonpecuniary damages from non-employer third parties.

### III. Conclusion

We AFFIRM the district court's judgment that federal admiralty jurisdiction is proper in this case and its holding that a Jones Act seaman or his survivors cannot recover nonpecuniary damages from a non-employer third party.

---

[5] Our holding is in accord with the Ninth Circuit's resolution of the same issue. Davis v. Bender Shipbuilding and Repair Co., 27 F.3d 426, 430 (9th Cir. 1994) (holding that "nothing in Miles' reasoning [suggests] that the decision turned upon the identity of the defendant. Indeed, not all of the defendants in Miles were Jones Act employers.").

13